JOHN J. FORBES *vs.* WILLIAM E. KANE.

Middlesex.   January 26, 1944. — May 5, 1944.

Present: FIELD, C.J., LUMMUS, QUA, & WILKINS, JJ.

*Woburn. Municipal Corporations,* City charter, Officers and agents. *Public Officer. Unlawful Interference. Actionable Tort. Evidence,* Judicial notice. *Waiver. Civil Service. District Court,* Review of action with respect to civil service.

This court takes judicial notice of a statutory city charter, but not of a city ordinance.

Under the charter of Woburn, St. 1897, c. 172; St. 1914, c. 372, the power of appointing the inspector of wires was in the city council.

Formal action by the city council of Woburn over a period of years in fixing the salary for the office of inspector of wires and in appropriating the salary so fixed might properly be found to have been a recognition and acceptance by the council of one as the holder of the office who during such period performed the duties and received the salary thereof, and to have been the equivalent of a valid formal appointment of him by the council within the authority given by the charter.

If the mayor of a city, in removing a city officer, relied on a decision by a trial court, later reversed by this court, that an ordinance under which the officer had been appointed was invalid, such reliance would not be a defence to a subsequent action of tort by the officer against the mayor for illegal removal.

Bad faith on the part of the defendant is not a necessary element in a cause of action for illegally removing a public officer and thereafter preventing him from performing the duties and enjoying the perquisites of his office.

Illegal acts of the mayor of a city, outside his jurisdiction, in purporting to remove a city officer and thereafter preventing him from being recognized as the holder of the office and from performing the duties thereof justified recovery by the officer against the mayor personally in an action of tort.

If the holder of an office in the civil service, by seeking review by a District Court of a purported removal of him from the office, waived the point that the removal was by one having no jurisdiction to remove him, such waiver would be only for the purposes of the proceeding in the District Court and would not be a defence to a subsequent action of tort by the officer for illegal removal.

TORT. Writ in the Superior Court dated September 8, 1941.

The declaration was as follows: "Now comes the plaintiff in the above entitled case and says that he is the present incumbent of the office of inspector of wires and gas in the city of Woburn having been appointed to that office in 1921. The defendant is the mayor of the city of Woburn. On or about July 1, 1938, the defendant wrongfully and unlawfully purported to remove the plaintiff from his office. The defendant wrongfully and unlawfully failed and refused to give the plaintiff notice and to furnish him with a copy stating specifically the reasons for removal and to afford him an opportunity to prepare and present his defense and thereafter wrongfully and unlawfully restrained and prevented him from holding said office and performing and exercising the duties of said office, wrongfully and unlawfully ousting plaintiff from said office and depriving him of the privileges and emoluments pertaining thereto and wrongfully and unlawfully refusing to recognize him as holding said office. The plaintiff thereafter on December 15, 1938, brought suit against the city of Woburn to recover his salary and to determine his right to the position and on May 28, 1940, the Supreme Judicial Court held that the plaintiff was entitled to the position; that on October 16, 1940, in a proceeding brought in the Fourth District Court of Eastern Middlesex the defendant was ordered to restore

the plaintiff to his position without loss of compensation but despite this the defendant continues to refuse to permit the plaintiff to perform the duties of his office and to allow the payment of his salary to the plaintiff. By reason of the foregoing, the plaintiff's reputation and standing in the community both as a public officer and a citizen have been seriously damaged, he has been deprived of the salary of said office and has been put to great expense to carry on the litigation necessary to establish his right to said office and to recover the salary therefor, all to his great damage as alleged in his writ."

The case was heard by *Good*, J., without a jury. There was a finding for the plaintiff, and the defendant alleged exceptions. In this court the case was submitted on briefs.

*E. T. Simoneau*, for the defendant.

*J. W. Bartlett & W. G. Guernsey*, for the plaintiff.

WILKINS, J. There is presented another aspect of the controversy concerning the holding by the plaintiff of the office of inspector of wires and gas of Woburn. See *Forbes v. Woburn*, 306 Mass. 67. This action of tort is against the mayor for unlawfully preventing the plaintiff from enjoying the perquisites of that office. The defendant's exceptions raise solely the question whether the trial judge was warranted in finding for the plaintiff.

1. The defendant contends that the declaration has limited the cause of action to the period between July 1, 1938, the date on which, it was alleged, the defendant removed the plaintiff from office, and December 15, 1938, and that there was no evidence of acts by the defendant during that period on which a finding for the plaintiff was warranted. The point is not open, as the defendant's requests for rulings, which were to the effect that there must be a finding in his favor, were not based upon the pleadings. *Botti v. Venice Grocery Co.* 309 Mass. 450, 458. Nor is this contention sound. The evidence does show that the defendant removed the plaintiff on August 4, 1939, but the declaration also sets up reinstatement on October 16, 1940, by order of the Fourth District Court of Eastern Middlesex and further alleges, "despite this the defendant continues to refuse

to permit the plaintiff to perform the duties of his office and to allow the payment of his salary to the plaintiff."

2. The defendant assails the validity of the ordinance creating the office on the ground that the city council was not authorized to confer the power of appointing the inspector of wires and gas upon the superintendent of public works but could confer the power only upon the mayor. This point was not discussed in *Forbes* v. *Woburn,* 306 Mass. 67. It may now be raised. That "decision does not stand as authority for any proposition not considered." *Cawley* v. *Northern Waste Co.* 239 Mass. 540, 544.

We take judicial notice of the acts incorporating the city of Woburn, but ordinances must be put in evidence and made part of the bill of exceptions. *Attorney General* v. *McCabe,* 172 Mass. 417, 420. *Commonwealth* v. *Kimball,* 299 Mass. 353, 355. G. L. (Ter. Ed.) c. 233, § 74; § 75 (now amended by St. 1943, c. 190).

The only section of the ordinance to which our attention is thus directed reads as follows: "There shall be an inspector of wires and gas who shall be appointed by the Superintendent of Public Works and who shall have the care, repair, construction, alteration, superintendence and management of all electrical and gas equipment of every name and nature owned and operated by the city in any and all of its departments, and the annual salary of such inspector shall be $3,000" (c. 17, § 1, effective April 7, 1931).

Woburn became a city in 1889, following the adoption of a charter. See St. 1888, c. 374. By St. 1890, c. 404, § 3, it was provided: "Every city shall, by ordinance, designate or provide for the appointment of an officer who shall supervise every wire over streets or buildings in such city, and every wire within a building when such wire is designed to carry an electric light or power current; shall notify the person or corporation owning or operating any such wire whenever its attachments, insulation, supports or appliances are unsuitable or unsafe, or the tags or marks thereof are insufficient or illegible, and shall, at the expense of the city, remove every wire abandoned for use, and every wire which after the six months aforesaid shall be unprovided with a

tag or mark, as hereinbefore required, such expense to be repaid by the owner of such wire; and shall see that all laws, ordinances and regulations relating to such wires are strictly enforced." Thereafter the voters accepted a new charter. See St. 1897, c. 172. This gave the city council the general power to make ordinances (§ 18) as well as the specific authority to fix by ordinance the salaries of the offices created by the charter statute and of offices that might be created thereafter (§ 20); required the mayor annually to recommend appropriations to the city council (§ 27); laid upon the city council the duty to appropriate the amount necessary to meet expenditures for the current municipal year (§ 21); created a board of public works consisting of the mayor and four others appointed by him (§ 32); and gave to the board "cognizance, direction and control . . . (h) of the supervision of electric light, power, telephone, telegraph and trolley wires, and electric light, telegraph and telephone poles and gas pipes, and the erection, placing and removal thereof . . . [together with] the power to employ engineers, superintendents, clerks and such other assistants as they may deem necessary, and to fix the compensation of their appointees" (§ 33). "The new charter is complete in itself; it is intended to be exclusive in its field. All earlier statutes, so far as inconsistent with its terms, are deemed to be repealed. All that has been theretofore enacted is revoked except as preserved in the new charter." *Gilliatt* v. *Quincy*, 292 Mass. 222, 224. Statute 1890, c. 404, § 3, providing for a different method of supervising wires, therefore, did not apply to Woburn after the effective date of the charter. In 1902, St. 1890, c. 404, § 3, was recodified in part as follows: "A city shall, by ordinance, designate or provide for the appointment of an inspector of wires . . .. Such inspector shall supervise every wire over or under streets or buildings in such city . . . and every wire within a building which is designed to carry an electric light, heat or power current." The remainder of the recodification, so far as at present material, was substantially as before. R. L. c. 122, § 18, now G. L. (Ter. Ed.) c. 166, § 32. It does not appear that by the recodification there was any intent

to repeal the provisions of the charter of Woburn relative to the supervision of wires. See *Great Barrington* v. *Gibbons*, 199 Mass. 527, 529; *Main* v. *County of Plymouth*, 223 Mass. 66, 69. This is also manifest from St. 1914, c. 372, § 2, which abolished the board of public works, and provided, "The powers, duties and liabilities conferred or imposed by the said chapter one hundred and seventy-two on the said board of public works are hereby transferred to the city council . . . except that the powers, duties and liabilities of the said board of public works in respect to . . . [here follow certain immaterial powers] (H) The supervision of the electric lights, power, telegraph and telephone poles and gas pipes, and the erection, placing and removal thereof, are hereby transferred to the superintendent of public works." The supervision of wires, as distinguished from poles, was thus given to the council along with the power to employ the assistants enumerated in § 33 of the charter. The office of inspector of wires, accordingly, did not fall within § 23 of the charter, which read, "The mayor shall have sole power of appointment to all the municipal offices established by or under this act, unless herein otherwise provided." The power of appointment to this office at the time of the passage of the ordinance was thus vested in the city council, which in the absence of statute had no authority to delegate the same to the superintendent of public works. See *Attorney General* v. *McCabe*, 172 Mass. 417, 420. Compare *O'Brien* v. *Thorogood*, 162 Mass. 598. See McQuillin on Municipal Corporations (2d ed.) § 473.

It, therefore, becomes necessary to determine whether the city council has by its acts recognized and accepted the plaintiff as the holder of the office, and if it has, whether such action was the equivalent of a valid formal appointment by it. From the testimony the following could have been found: The plaintiff was first employed as inspector of wires in 1920, and continued as such down to the bringing of the present action. At first he received no compensation. In 1921 an annual salary of $500 was established. By ordinance in 1931 the salary was set at $3,000, and the plaintiff was paid at this rate until 1938. The position was in the

classified civil service. The defendant testified that in 1938 "he inserted $1,500 in the budget for the salary of the inspector of wires and gas because 'The investigation . . . [he] made showed that there was very little work to do, for a man who was receiving $3,000, which was the second highest salary paid in the city of Woburn.'" The budget for 1938 as voted by the city council contained under the general heading "Protection of Persons and Property" the following, "Wire Inspection   Salaries & Wages   1,500   Other Expenses   10   1,510."

It is quite clear that the duties prescribed for the inspector of wires and gas under the ordinance fall short of those enumerated by G. L. (Ter. Ed.) c. 166, § 32. They were confined, so far as shown by the one section of the ordinance admitted in evidence, to "the care, repair, construction, alteration, superintendence and management of all electrical and gas equipment of every name and nature owned and operated by the city in any and all of its departments." There were no duties prescribed as to wires "over or under streets or buildings . . . and every wire within a building designed to carry an electric light, heat or power current." If validly appointed, the plaintiff could have maintained an action for the established salary if it had not been paid him. *Kimball* v. *Salem*, 111 Mass. 87. *Parks* v. *Waltham*, 120 Mass. 160. *Arlington* v. *Peirce*, 122 Mass. 270. *Hooker* v. *McLennan*, 236 Mass. 117, 120. *Seaver* v. *Onset Fire District*, 282 Mass. 209, 216. *McHenry* v. *Lawrence*, 295 Mass. 119, 121. *Bell* v. *Treasurer of Cambridge*, 310 Mass. 484, 487. See *Forbes* v. *Woburn*, 306 Mass. 67, 68. From 1921 on the plaintiff was apparently paid the salary established for the inspector of wires and gas. While the record does not affirmatively show that down to the year 1938 this was by vote of the city council, as required by the charter, there is a presumption of validity of action. *Bryant* v. *Pittsfield*, 199 Mass. 530, 532. *Burt* v. *Municipal Council of Taunton*, 272 Mass. 130, 132. *Coleman* v. *Louison*, 296 Mass. 210, 214. The ordinance of 1931 having established a salary of $3,000 for the inspector of wires and gas, the appropriations for the succeeding years down to 1938 must

be taken to be in recognition of the obligation of the city to pay this amount to the plaintiff. The vote appropriating $1,500 for wire inspection in the 1938 budget does not refer to the plaintiff by name. Nevertheless the long holding of the office by the plaintiff, and by no one else, the defendant's testimony that when he transmitted to the city council his recommendations for appropriations, as required by the charter, he included $1,500 for the salary of the inspector of wires and gas, together with the absence of anything in the record showing the existence of other persons entitled to salaries and wages for wire inspection, warranted a finding that the amount so appropriated was on account of the obligation to pay the plaintiff created by the ordinance. We conclude, therefore, that the city council by its acts from 1921 to 1938 recognized and accepted the plaintiff as the inspector of wires and gas. *Rappaport* v. *Lawrence*, 308 Mass. 545, 548. See *Connell* v. *Board of Public Works of Everett*, 234 Mass. 491, 492; *McMahon* v. *Des Moines*, 232 Iowa, 240; *Storrs* v. *Manchester*, 88 N. H. 139, 143; *State* v. *Haynes*, 21 Vroom, 97, 101; *Ross* v. *Garfield*, 126 N. J. L. 462, 463; *Vermeule* v. *Corning*, 186 App. Div. (N. Y.) 206, 208–209. Compare *People* v. *Ford*, 163 Mich. 359. Such action in formal meeting of the council (see *Kenney* v. *McDonough*, 315 Mass. 689, 693) was equivalent to an original appointment by it.

The defendant also contends the ordinance was invalid in other respects, but none of them is open upon the section of the ordinance quoted above.

3. The defendant further contends that he cannot be held liable for removing the plaintiff on August 4, 1939, because at that date the Superior Court in *Forbes* v. *Woburn*, 306 Mass. 67, following *Fortin* v. *Chicopee*, 301 Mass. 447, had already ruled that the ordinance under which the plaintiff was appointed was invalid. No authority is cited for this proposition. Moreover, it does not appear on this record that the plaintiff prevailed because of having been removed from office. In any event, this would merely tend to show the absence of bad faith on the defendant's part. Bad faith is not an element in an action like the present. *Stiles* v.

*Municipal Council of Lowell*, 233 Mass. 174. *Ashton* v. *Wolstenholme*, 243 Mass. 193, 196. If the defendant chose to rely upon the decision of the trial court, he did so at his peril. *Evans* v. *Supreme Council ·of the Royal Arcanum*, 223 N. Y. 497, 503. See *Great Northern Railway* v. *Sunburst Oil & Refining Co.* 287 U. S. 358.

4. The defendant also urges that a finding against him was unwarranted, because he did nothing outside or in excess of his jurisdiction as mayor. This argument is based, in part, on the assumption, contrary to what we have held herein, that the ordinance is invalid. As we have said, there is no way of knowing whether the judge considered the attempted removal of the plaintiff on the issue of liability. We are of opinion, however, that this could properly have been considered. The defendant, while denying the plaintiff's right thereto, nevertheless gave him a hearing on written charges, none of which was found to have been sustained by the District Court, which ordered the plaintiff reinstated. The mayor was not the proper officer to conduct the hearing on the removal of the plaintiff. The hearing was, therefore, without legal basis, and was, in fact, no hearing at all. The order of removal was likewise void. Consequently, this part of the evidence, if believed and relied upon by the judge, would fall within the principle of *Stiles* v. *Municipal Council of Lowell*, 233 Mass. 174. There also was evidence from which the judge could have found that the defendant stopped the plaintiff from performing the work of inspector, and sent notices of the removal to department heads; that the defendant told the plaintiff to get off the premises of the fire alarm headquarters at the fire station or he would have him arrested; that the plaintiff was ordered off the premises at the pumping station and was told that the· door would be locked "by orders of the office"; that the police were told not to recognize him; that the fire chief, who was the mayor's brother, told him he would have to stay away by order of the defendant; that the fire chief said he would be "fired" if he recognized the plaintiff; that he was "shut off" from working at the department of public works; and that "they" took all the equipment away from

him. All these acts were outside the jurisdiction of the mayor, and could have been found to have been an unlawful prevention by the defendant of the performance of his duties by the plaintiff. The mayor admitted in his testimony that both before and after the order of reinstatement, and it also appeared that both before and after the decision of this court in *Forbes* v. *Woburn*, 306 Mass. 67, he put an inadequate, and in the last few years, a nominal, amount to pay the plaintiff's salary in his budget recommendations to the city council, and during that period the plaintiff, who sued the city three times for his salary, was paid only on executions. These acts were not without, or in excess of, the jurisdiction of the mayor, *Jaffarian* v. *Murphy*, 280 Mass. 402, but again we cannot tell whether the judge believed or relied on this part of the testimony, the separate effect of which is not the subject of any exception.

5. One further point remains. The defendant argues that by bringing the petition for reinstatement in the District Court the plaintiff admitted that the defendant had jurisdiction to act. Indeed, the judge of the District Court ruled on the authority of *Daley* v. *District Court of Western Hampden*, 304 Mass. 86, that the question of law as to the proper removing power was not open in a hearing on the petition, and that the petitioner had waived the same by filing and proceeding with the petition. It would have been more accurate to say, "By seeking review in the District Court he conceded that a foundation had been laid for that procedure." *Parker* v. *District Court of East Norfolk*, 309 Mass. 377, 380. For the present it is sufficient to indicate that any such admission or waiver would be only for the proceedings in the District Court.

*Exceptions overruled.*