DONALD A. GRANT & others *vs.* ALDERMEN OF NORTHAMPTON.

Hampshire.    May 4, 1944. — June 5, 1944.

Present: FIELD, C.J., QUA, RONAN, WILKINS, & SPALDING, JJ.

*Municipal Corporations*, Officers and agents. *Northampton. Mandamus. Evidence*, Judicial notice. *Words*, "Shall."

Upon the death of the mayor of Northampton, the board of aldermen were required by G. L. (Ter. Ed.) c. 39, § 6, which was in force in that city, to issue a warrant for an election to fill the vacancy.

The provisions of § 5 of G. L. (Ter. Ed.) c. 39, respecting the powers given an "acting mayor" of a city upon the mayor's death, resignation, absence or inability to perform his duties, read with § 9 of the charter of Northampton, St. 1883, c. 250, recognizes the temporary tenure of such acting mayor and does not alter the duty of the board of aldermen under c. 39, § 6, to provide for an election to fill a vacancy caused by the death of the mayor.

Judicial notice is taken of city charters.

The discretion given to the board of aldermen of a city in the choice of time and place for an election, required by G. L. (Ter. Ed.) c. 39, § 6, to fill a vacancy caused by the death of the mayor, did not permit them to avoid their duty to call an election by fixing no time and place; and this court ordered the issuance of a writ of mandamus commanding the board to issue their warrant for an election and specifying a date before which the election must be held but leaving to the board a reasonable discretion as to the time thereof.

PETITION for a writ of mandamus, filed in the Supreme Judicial Court for the county of Hampshire on March 15, 1944.

The case was reserved and reported by *Qua*, J., without decision. In this court it was submitted on briefs.

*A. D. Morse & H. I. Grousbeck,* for the petitioners.

*C. J. O'Connor,* City Solicitor, for the respondents.

QUA, J. The newly elected mayor of Northampton died a few days after he took office at the beginning of the year 1944. By stipulation of the parties the only question to be decided is whether the board of aldermen are now bound to issue their warrant for an election to fill the vacancy.

General Laws (Ter. Ed.) c. 39, § 6, reads in part: "If there is a vacancy in the board of aldermen, in the common council, or in a city or ward office which is to be filled by an election of the people, the board of aldermen shall issue their warrant for an election to fill such vacancy at a time and place designated by them." The city had "accepted corresponding provisions of earlier laws" within the meaning of those words in another sentence of § 6. Section 6 is a general statute intended to take effect in all cities of the Commonwealth which have accepted it or which have accepted corresponding provisions of earlier laws, or at least in all such cities in respect to which, as in the case of Northampton, there is no special statutory provision to the contrary. The office of mayor is a city office. It follows that by the express terms of § 6 it has become the duty of the board of aldermen to issue their warrant for an election. The word "shall" is a word of command and leaves no discretion in the board to refuse to carry out the statutory mandate. *Elmer* v. *Commissioner of Insurance,* 304 Mass. 194, 196.

There is nothing in c. 39, § 5, or in the history of §§ 5 and 6 which should lead to a contrary result. Section 5 provides that, except as otherwise provided by city charters, upon the death, resignation, or absence of the mayor or his inability to perform the duties of his office other officers successively named shall perform those duties. The temporary tenure of the officer upon whom the duties devolve is recog-

nized in § 5 by designating him as "acting mayor" and by the provision that he "shall possess the powers of mayor only in matters not admitting of delay, and shall not make permanent appointments." The only reference in the charter of Northampton to a vacancy in the office of mayor provides that "In case of a vacancy in the office of mayor, or of his inability to act, the president of the board of aldermen shall act as mayor until the inability ceases or the vacancy is filled." St. 1883, c. 250, § 9. As to vacancies in the city council see § 10. Even if this charter provision relative to a vacancy in the office of mayor is so worded as to relieve the acting mayor of Northampton of the limitations upon his exercise of the powers of the office of mayor which are imposed upon acting mayors in general by G. L. (Ter. Ed.) c. 39, § 5 (*Ryan* v. *Boston*, 204 Mass. 456, 459), nevertheless the provision recognizes the temporary tenure of the acting mayor by ending his powers when the inability of the mayor to act ceases or the vacancy is filled. There is nothing in G. L. (Ter. Ed.) c. 39, § 5, or in the city charter that alters the duty of the board of aldermen to provide for the election of a mayor as commanded by G. L. (Ter. Ed.) c. 39, § 6. Section 6 must be construed in accordance with its present wording and not necessarily as if it still read as did one of its predecessor sections, Pub. Sts. c. 28, § 19, which contained a provision for the calling of an election "When it appears to the mayor and aldermen that there is a vacancy . . . either in their board . . . or in a city or ward office." Whatever construction would have been given to a section so worded (and we do not imply that it would have been different, since "mayor and aldermen" long meant "board of aldermen," St. 1882, c. 164; R. L. c. 8, § 5, Tenth), the change to substantially the present wording, which was effected by G. L. c. 39, § 6, must be recognized, and the section must be fairly construed as it now reads. The construction of the statute contended for by the respondents would lead to the strange result that although the board of aldermen must issue a warrant for an election to fill some comparatively minor city office, the commonly important office of mayor must sometimes, as

in this case, remain for practically an entire term in the hands of one who has never been elected thereto. A construction of the statutes leading to such a result is not easily accepted.

A demurrer filed with the respondents' answer requires no separate discussion. The absence of further allegations as to provisions of the city charter is immaterial, since city charters are public laws of which the court takes notice, G. L. (Ter. Ed.) c. 233, § 74; *Framingham Homes, Inc.* v. *Dietz,* 312 Mass. 471, 473, and in any event the demurrer was waived by submitting the case upon a "Stipulation and Agreed Statement of Facts" which amounted to a case stated. *West Roxbury* v. *Minot,* 114 Mass. 546. *Hull* v. *Adams,* 286 Mass. 329, 333.

It is true that under § 6 the time and place of the election are to be in the discretion of the board of aldermen, exercised reasonably and in good faith, but this does not mean that the board can wholly refuse to perform its duty by fixing no time and place. See *Crocker* v. *Justices of the Superior Court,* 208 Mass. 162, 164–165; *Dullea* v. *Selectmen of Peabody,* 219 Mass. 196; *Mengel* v. *Justices of the Superior Court,* 313 Mass. 238, 243–244, and cases cited.

A writ must issue commanding the respondents to issue their warrant for an election to fill the vacancy in the office of mayor in accordance with G. L. (Ter. Ed.) c. 39, § 6. The writ shall specify a date before which the election must be held, but shall afford an opportunity for the exercise of a reasonable discretion by the board as to time. The details of the writ are to be fixed by the single justice after further hearing.

*So ordered.*