ALBERT G. STRACHAN & others *vs.* MAYOR OF EVERETT & others.

Middlesex.    December 6, 1950. — January 4, 1951.

Present: QUA, C.J., RONAN, WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Everett. Municipal Corporations,* Officers and agents. *Public Officer.*

Under §§ 35, 60, of St. 1892, c. 355, the charter of the city of Everett, which as a town had accepted St. 1882, c. 154, the appointment of park commissioners is governed by G. L. (Ter. Ed.) c. 45, § 2, as amended by St. 1941, c. 10, § 1, and not by § 29 of the charter, so that appointments of park commissioners by the mayor approved by the board of aldermen only were defective.

Persons who had been appointed park commissioners of the city of Everett by its mayor but whose appointments were defective in that they had not been formally approved by the city council as required by statute had no title to their offices even though the city council knew that they were serving as park commissioners and recognized them as such.

PETITION for a writ of mandamus, filed in the Superior Court on January 25, 1950.

The case was heard by *Beaudreau,* J.

*H. E. Albert,* City Solicitor, for the respondents.

*M. T. Silverstein, (E. J. Barshak* with him,) for the petitioners.

RONAN, J. This is an appeal by the respondents from a judgment entered upon a petition for a writ of mandamus commanding the respondent mayor of Everett to recognize the petitioners as the duly appointed park commissioners of

that city, and ordering three other respondents to refrain from representing themselves as being such commissioners.

Piazza, Strachan, and Della Piano, the petitioners, were appointed by the then mayor on January 12, 1948, July 19, 1948, and February 28, 1949, respectively, as park commissioners for terms that will not expire until 1952, 1953, and 1954, respectively. Their appointments were approved by the board of aldermen but not by the common council, the other legislative branch of the city. Both comprise the city council, but the common council never confirmed the appointments of the petitioners. They continued to occupy their offices as park commissioners until January 3, 1950, when they were notified by the respondent mayor, purporting to act under the city charter, St. 1892, c. 355, § 29, that they were removed for the good of the service. This action of the mayor has not been approved by the board of aldermen or the common council. On the same day, the mayor appointed the three respondents to succeed the petitioners. The board of aldermen and the common council have not acted upon these appointments.

The town of Everett on April 30, 1891, duly accepted St. 1882, c. 154, authorizing cities and towns to lay out public parks within their limits. This chapter in § 1 provided for the appointment of park commissioners in cities by the mayor with the approval of the city council, and for their removal "by a concurrent vote of two-thirds of the whole of each branch of such city council." This section in its present form appears as G. L. (Ter. Ed.) c. 45, § 2, as amended by St. 1941, c. 10, § 1, and so far as material provides for the appointment of members of a board of park commissioners by the mayor with the approval of the city council, and that a commissioner may be removed by a vote of two thirds of all the members of a city council. It is undisputed that the provisions of this statute were not complied with in the appointment or removal of the petitioners or in the appointment of their successors.

The city charter, St. 1892, c. 355, became operative January 1, 1893. By § 60 provision was made that all general

laws and special laws which had been accepted by the town should continue in force upon the acceptance of the charter, until altered, amended or repealed. Section 29 of the charter, so far as material, provides that "The mayor shall appoint, subject to the confirmation or rejection of the board of aldermen, all the officers of the city, unless their election or appointment is herein otherwise provided for. . . . Any officer so appointed may be removed by the mayor for such cause as he shall deem sufficient . . .." But the appointment of park commissioners is "herein otherwise provided for," because § 35, so far as pertinent, provides that "The city council may from time to time, subject to the provisions of this act and in accordance with general laws, if they exist in any particular case, provide by ordinance for the establishment of additional boards and other offices . . . [and] for the direction and custody of public parks."

The acceptance of St. 1882, c. 154, with reference to public parks, including the provisions for the appointment and removal of park commissioners, continued unaffected upon the adoption of the charter by virtue of § 60 — assuming such a section was necessary — and, the scope of § 29 being limited by § 35, there is nothing in the city charter that supersedes or is inconsistent with what is now G. L. (Ter. Ed.) c. 45, § 2, as amended. It follows that the appointments of the petitioners by the mayor with the approval of the board of aldermen alone were not in compliance with § 2 and gave them no legal title to the office.

The petitioners, however, contend that, even if their appointments were defective, their duties during their period of service in making annual reports, in preparing estimates for the budgets, and in the performance of the other duties enumerated in the ordinances brought them into such contact with the city council that the latter body must have known that they were serving as park commissioners and so recognized them as such officials, and that such conduct upon the part of the city council was equivalent to a formal approval. They rely upon *Connell* v. *Board of Public Works*

*of Everett,* 234 Mass. 491, *Rappaport* v. *Lawrence,* 308 Mass. 545, and *Forbes* v. *Kane,* 316 Mass. 207. In the first case, a plumber hired by the mayor when he should have been hired by the board of public works was employed under the immediate supervision and control of the latter board; in the second case, the plaintiff, a laborer, after working several years for the city was refused his wages by the city on the ground that his original employment several years before had been improper because it occurred after the annual budget was passed; and in the third case, an inspector of wires, who was appointed by the mayor instead of by the city council and had served the city for seventeen years, was paid out of appropriations specially made by the city council for his compensation. In all of these cases it was held that the proper appointing board had recognized that these plaintiffs were properly engaged in the service of the city. All three plaintiffs were in the classified service and the contracts of employment of the plaintiffs in the first two cases and the appointment of the plaintiff in the third case were adopted by the officer or board which was authorized to hire or appoint them. The principle governing those cases cannot be stretched to include the instant case. Park commissioners are public officers having the power to take land, to lay out and improve public parks, to make rules for their use and government, and to exercise all the other powers conferred upon them by G. L. (Ter. Ed.) c. 45, §§ 1–11. They serve without compensation. Parks are created, developed, and maintained not only for the exclusive benefit of the residents of the municipality where they are located but for the enjoyment of the general public at large. The municipality holds the parks not in any private or proprietary capacity but as an agency of the government, and park commissioners are engaged in the performance of an important governmental function. *Lowell* v. *Boston,* 322 Mass. 709, 731, and cases cited. As already pointed out, under the statute, G. L. (Ter. Ed.) c. 45, § 2, the appointment as park commissioners requires the approval of the city council. The nomination by the

mayor is only the initial step and the appointment is not complete without confirmation by the city council. It was said in *Commonwealth* v. *Allen,* 128 Mass. 308, 311, where the statute gave the mayor the exclusive power of nomination of a chief of police subject to confirmation by the board of aldermen, that the announcement of the mayor, at the close of a vote of the aldermen, that the aldermen did not reject the nomination was not sufficient to constitute an appointment, "nor could the silence of the aldermen at the time of such announcement, nor their subsequent approval of the defendant's bond after he had taken the oath of office and become chief of police de facto, supply the want of the necessary vote of the board of aldermen to make him such de jure." See also *Phelon* v. *Granville,* 140 Mass. 386, 389; *Saunders* v. *Lawrence,* 141 Mass. 380. We see nothing that takes the case out of the general rule that a nomination by a mayor, without approval of one or both legislative branches of a city where such approval is required by a statute, does not give the nominee the legal title to a public office. *People* v. *Welsh,* 260 Ill. 532. *Mahoney* v. *Biddeford,* 130 Maine, 295. *Schulte* v. *Jefferson,* 221 Mo. App. 369. *State* v. *Stafford,* 97 Mont. 275. *State* v. *Johnson,* 135 Wash. 109. *Broadwater* v. *Booth,* 116 W. Va. 274. *People* v. *Christian,* 58 Wyo. 39. 42 Am. Jur., Public Officers, § 111. 22 R. C. L. 433. 46 C. J. page 953. McQuillin, Municipal Corporations (3d ed.) § 12.87.

The judgment must be reversed and judgment must be entered dismissing the petition.

*So ordered.*