GERALD BAIZEN & another,[1] trustees, *vs.* BOARD OF PUBLIC WORKS OF EVERETT.

Middlesex.   November 14, 1973. — December 12, 1973.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Municipal Corporations,* Waterworks. *Everett.*

Under St. 1871, c. 205 § 1, the board of public works of Everett could not be compelled to supply water to an apartment building to be built entirely on the Chelsea portion of a parcel of land lying in small part in Everett and mostly in Chelsea. [603-605]

PETITION filed in the Superior Court on March 10, 1972.

The case was heard by *Tomasello,* J.

*Richard J. O'Neil,* City Solicitor, for the Board of Public Works of Everett.

*Robert A. Greeley* for Gerald Baizen & another, trustees.

---

[1] Harold Stavisky.

Baizen *v.* Board of Public Works of Everett.

GRANT, J.   This is a petition for a writ of mandamus
brought by the owners of a parcel of land lying partly in
Everett but mostly in Chelsea to compel the board of public
works of the city of Everett (board) to supply water service
to the entire parcel. The board has appealed from a final
judgment that a writ issue as prayed for. The order for
judgment recites that the case was heard on the petition
and the answer (compare *Taylor* v. *Haverhill,* 316 Mass.
380, 381 [1944]) and incorporates by reference therein a
plan certified under the provisions of S.J.C. Rule 1:06, 351
Mass. 735.[2] There is no report of material facts; except for
the plan, we have none of the evidence which was before the
Superior Court. See G. L. c. 213, § 1D; G. L. c. 214, §§ 23
and 24.

The facts made to appear from the pleadings and the
plan may be summarized briefly. The parcel in question
lies on the northerly side of Dartmouth Street, which is an
accepted street on the Everett side of the city line but
possibly still a private way on the Chelsea side of the line. It
has a frontage of 15.84 feet on Dartmouth Street on the
Everett side and a frontage of 164.16 feet (91.2 percent of
the total) on the Chelsea side. The portion of the parcel
lying in Everett has an area of 315 square feet; the portion in
Chelsea an area of approximately 13,443 square feet (97.7
percent of the whole). The petitioners propose to build,
entirely on the Chelsea portion of the parcel, a nine unit
apartment building. On or about September 30, 1971, they
made application to the board for water service to their
proposed building.[3] So far as appears, no water would be
used or consumed on the Everett portion of the parcel.

The board has taken the position that it is prohibited by
c. 18, § 2, of the Revised Ordinances of the City of Everett
(1957)[4] from granting the requested service and has not

---

[2] The appeal was entered in this court. G. L. c. 211A, § 10(c), inserted by
St. 1972, c. 740, § 1.

[3] We have not been informed of the locations of the nearest public water mains
in either Everett or Chelsea.

[4] "The board of public works shall distribute and control the use of the water
furnished to the city; shall install and maintain water meters in accordance with

Baizen *v.* Board of Public Works of Everett.

done so. We believe the answer to the controversy presented by the limited record in this case lies deeper than the ordinance and is to be found in the statutory provisions which have authorized the establishment and operation of Everett's water system and in those which constitute the city's charter.[5]

Everett. was set off from Malden and incorporated as a town by St. 1870, c. 66, § 1. The town was authorized by St. 1871, c. 205, § 1, "to lay, construct and maintain, within . . . [its] limits . . . such pipes, aqueducts and structures in connection with the water works or aqueducts of the city of Charlestown, or the towns of Malden, Melrose and Medford, as may be requisite for the purpose of supplying water *to the inhabitants of said town of Everett,* for the extinguishment of fires and for other purposes" (emphasis supplied).[6] Everett was chartered as a city by St. 1892, c. 355, § 1.[7] Nothing in the charter effected any change in the quoted provisions of St. 1871, c. 205, § 1.[8]

---

the laws of the Commonwealth. The board of public works shall lay and install pipes, hydrants and other fixtures and appliances necessary or proper for supplying water *within the city,* and shall keep and maintain the pipes and other waterworks under their charge in good condition and repair . . ." (emphasis supplied).

[5] We can and do take judicial notice of both types of provisions. G. L. c. 233, § 74. *Framingham Homes, Inc.* v. *Dietz,* 312 Mass. 471, 473 (1942). *Grant* v. *Aldermen of Northampton,* 316 Mass. 432, 435 (1944). *Salisbury Water Supply Co.* v. *Salisbury,* 341 Mass. 42, 44 (1960).

[6] Later provisions relative to Everett's water supply system which are of no present moment but which may be of historical interest are to be found in the following: St. 1872, c. 52; St. 1873, c. 68; St. 1884, c. 46; St. 1886, cc. 280 and 351; St. 1891 c. 149; St. 1892, c. 189; St. 1895, c. 488, § 7. Following the study commanded by St. 1893, c. 459, Everett became (by virtue of St. 1895, c. 488, § 3) part of what is now the metropolitan water district (G. L. c. 92, § 10, as most recently amended).

[7] See *Ray* v. *Mayor of Everett,* 328 Mass. 305, 306-307 (1952); *Everett* v. *Curnane,* 329 Mass. 490, 491, 492 (1952). We were advised at oral argument that the 1892 charter (as from time to time amended) is still in effect.

[8] Compare the situation found in *Strachan* v. *Mayor of Everett,* 326 Mass. 659 (1951). A study of §§ 2, 10, 22, 26, 29, 35 and 39 of the charter (St. 1892, c. 355) suggests that the ordinance quoted in note 4 of this opinion may go no further than to provide for the establishment, and generally define the duties, of the particular board which is to have responsibility for the care and management of the city's water supply system. Compare the somewhat similar provisions found in G. L. c. 40, § 21 (7), and in G. L. c. 92, §§ 27, 28 and 30.

It has been said that a statute containing language such as that which has been italicized in said § 1 would prevent Everett from selling water to another municipality. *Bailey* v. *Woburn,* 126 Mass. 416, 420 (1879).[9] It has been held that such language would prevent Everett from supplying water service to private properties located beyond its boundaries. *Turners Falls Fire Dist.* v. *Millers Falls Water Supply Dist.* 189 Mass. 263, 264 (1905).[10] The only established exception to the rule of the latter case appears to be one of convenience, one which would permit either Everett or an adjoining municipality to supply all the water requirements of a contiguous complex of buildings in single ownership which straddles the common municipal boundary if the water is delivered to one of the buildings at a point lying within the limits of the supplier. *Lawrence* v. *Methuen,* 166 Mass. 206, 208-209 (1896). No such situation exists in the present case. On the meager record before us we see no reason for creating a further exception to the rule of the *Turners Falls* case.

The judgment is reversed, and judgment is to be entered dismissing the petition.

*So ordered.*

---

[9] We are not here concerned with any such sale. See, as to the present law, G. L. c. 40, § 38, and G. L. c. 92, § 10(4), each as amended.

[10] Contrast the statutes considered in *Woodbury* v. *Marblehead Water Co.* 145 Mass. 509 (1888), and *Merrill* v. *Revere,* 211 Mass. 468 (1912).