CODEX CORPORATION & another[1] *vs.* METROPOLITAN
DISTRICT COMMISSION.[2]

Suffolk. May 9, 1984. — June 19, 1984.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Metropolitan District Commission. Municipal Corporations,* Selectmen,
Park commissioners. *Public Officer. Park. Statute,* Construction.
*Words,* "Act as."

The Metropolitan District Commission was not required by G. L. c. 92,
§ 79, to obtain the concurrence of the selectmen of a town, acting
pursuant to G. L. c. 45, § 2, as the town's board of park commissioners,
before taking certain privately held land within the town, or any interest
therein, by eminent domain for public reservation purposes. [248-253]
NOLAN, J., dissenting.

CIVIL ACTION commenced in the Superior Court on June
21, 1977.

The case was heard by *Meyer, J.*

The Supreme Judicial Court granted a request for direct
appellate review.

*Stephen M. Leonard,* Assistant Attorney General, for the
defendant.

*Samuel Hoar & Joseph H. Malloy (Rowena H. Conkling*
with them) for the plaintiffs.

*S. Stephen Rosenfeld & Patricia A. Boies,* for the Governor,
amicus curiae, submitted a brief.

*R. Lisle Baker & Gregor I. McGregor,* for The Friends of
the Blue Hills & others, amici curiae, submitted a brief.

---

[1] The town of Canton.

[2] We acknowledge the filing of a brief by the Governor of the Common-
wealth, and a brief by the following organizations: The Friends of the Blue
Hills, Friends of the Prowse Farm, The Massachusetts Association of Con-
servation Commissions, and the Massachusetts Audubon Society.

O'CONNOR, J. On May 22, 1984, this court issued the following order: "This is an appeal by the Metropolitan District Commission from a decision of the Superior Court ordering the entry of summary judgment for the plaintiffs and further ordering that 'the MDC shall not proceed with any eminent domain taking of land in Canton owned by Codex Corporation or impose any conservation or preservation restriction on such land unless it first obtains the concurrence of the Board of Selectmen of the Town of Canton.'

"After consideration of the record, briefs of the parties and amici curiae, and oral arguments of the parties, it is Ordered:

"1. that the judgment of the Superior Court be and hereby is vacated.

"2. that this case be remanded to the Superior Court for. the entry of judgment declaring that the Metropolitan District Commission is not required to request or obtain the concurrence of the Board of Selectmen of Canton in order to take in fee or otherwise, or impose restrictions on, the land in Canton, or rights therein, owned by Codex Corporation, by eminent domain.

"A rescript will issue forthwith. An opinion or opinions will follow."

This opinion is given in explanation of that order. By a complaint filed in the Superior Court, Codex Corporation (corporation) and the town of Canton (town) sought a declaratory judgment and injunctive relief against the Metropolitan District Commission (commission). The plaintiffs claimed in the Superior Court, and argue here, that the commission was required by G. L. c. 92, § 79, to obtain the concurrence of a majority of the board of selectmen of the town before it could take by eminent domain the corporation's land located in the town. All the parties moved for summary judgment, and a judge in the Superior Court granted the plaintiffs' motions and entered the order quoted in part above. We do not agree with the plaintiffs and the judge that the concurrence of the selectmen of Canton was required for the commission lawfully to exercise its power of eminent domain.

For background, we briefly recite some of the facts asserted in the pleadings and affidavits reproduced in the record. In 1977, the corporation purchased a fifty-five acre tract in the town, known as Prowse Farm. The corporation granted a conservation restriction to the town which would require that approximately 80% of the tract be maintained in an undeveloped state. The corporation desires to construct its worldwide headquarters, including office and research facilities, on the unrestricted portion of the property. A considerable amount of construction already has taken place. The board of selectmen has supported the corporation's plan because of its promise to increase tax revenues and provide employment opportunities while preserving 80% of the site in an undeveloped condition.

The commission secretary's affidavit, filed in the Superior Court in September, 1977, states that the commission owns and maintains as "open space" the Blue Hills Reservation, which consists of approximately 5,700 acres in Milton, Quincy, Braintree, Randolph, Canton, and Dedham. According to the affidavit, the commission was "witnessing a rapidly accelerating movement toward the sale of privately owned open space abutting the Blue Hills Reservation," and therefore it formulated a plan to acquire interests in land that it had reason to believe would soon be for sale. This was in order to protect the reservation from "the visual blight, noise and air pollution, and traffic caused by development." Because of "its strategic position at the base of the rock face of Great Blue Hill" the commission considered Prowse Farm as "the highest priority parcel . . . for preservation of open space."

According to an affidavit, the commission has tried since August, 1973, to obtain an ownership or other interest in the property. The commission would have voted on June 23, 1977, to take the property or an easement in it, by eminent domain. On June 21, 1977, however, the present action was commenced. The plaintiffs promptly obtained a temporary order restraining the commission from taking the property by eminent domain, and that order was subsequently continued in the form of a preliminary injunction. The judgment from which the present appeal was taken was entered in the Superior Court on

December 28, 1983. The appeal was entered in the Appeals Court in March, 1984, where a motion for an injunction barring further construction pending appeal had been denied by a single justice of that court on January 13, 1984. We granted the commission's application for direct appellate review.

General Laws c. 92, § 79, grants the commission the power to take land by eminent domain for reservations "provided, that no private property shall be taken or restrictions imposed by eminent domain hereunder without the concurrence of a majority of the commission and of the board of park commissioners, if any, of the town where said property is situated." General Laws c. 45, § 2, provides that a town may elect a board of park commissioners or may authorize its planning board or department of public works or road commissioners to act as one. See St. 1924, c. 209, § 1; St. 1976, c. 274. A town is not required to do so. Section 2 also provides that a mayor of a city, with the approval of the city council, may appoint a board of park commissioners. A mayor is not required to make such an appointment. Section 2 further provides that "[i]n a town which has not elected a board of park commissioners or has not authorized the town planning board so to act, the selectmen shall act as such board of park commissioners." There is no corresponding provision in § 2 for a board or a department of a city to "act as" a board of park commissioners in the absence of mayoral appointment.

Canton has not elected a board of park commissioners nor has it authorized its planning board, its department of public works, or its road commissioners to act in that capacity. Its selectmen, therefore, "act as" its park commissioners pursuant to G. L. c. 45, § 2. In deciding the one question presented by this case, whether the commission was required by G. L. c. 92, § 79, to obtain the concurrence of a majority of Canton's selectmen, we must consider whether the selectmen *are* the board of park commissioners within the meaning of G. L. c. 92, § 79, by virtue of the provision in G. L. c. 45, § 2, that they shall "act as" such board.

We do not rely entirely on niceties of expression, but we recognize that in common understanding one who *acts as* the

holder of an office does not hold that office but only has its responsibilities and powers. The holder of an office is not ordinarily considered to be *acting as* its holder. It is also true that although a town board acting as a board of park commissioners has the powers and responsibilities of such a board, it does not by virtue thereof become the board of park commissioners. General Laws c. 92, § 79, does not expressly require that the commission obtain the concurrence of local boards of park commissioners or of persons exercising the powers and having the responsibilities of such boards before exercising eminent domain powers. The requirement is limited to obtaining the concurrence of a town's board of park commissioners "if any." G. L. c. 92, § 79.

We also note that if the plaintiffs' view were to prevail, the commission would be obliged to obtain the approval of either elected park commissioners or the selectmen of any town in which a taking is contemplated. Every town, then, would have veto power whether or not it has elected a board of park commissioners. The same would not be true with respect to every city, however. Although the commission would be obliged to obtain the concurrence of the board of park commissioners or any city in which such a board had been appointed by the mayor with the concurrence of the city council, see G. L. c. 92, § 79,[3] no local approval would be required for a taking in a city in which no such board had been appointed. That is because G. L. c. 45, § 2, does not contain a provision that some other body within city government, as distinguished from *town* government, "shall act as such board of park commissioners" if none has been appointed.[4] It is highly unlikely that the

---

[3] General Laws c. 92, § 79, provides that "no private property shall be taken or restrictions imposed by eminent domain hereunder without the concurrence of a majority of the commission and of the board of park commissioners, if any, of the town where said property is situated." This applies to cities as well as towns, because of the provision in G. L. c. 40, § 1, that "[e]xcept as otherwise expressly provided . . . all laws relative to towns shall apply to cities." General Laws c. 92, § 79, does not provide otherwise.

[4] General Laws c. 45, § 1, expressly provides that in c. 45 the word "town" shall not include city.

Legislature intended that all towns, but only some cities, should have the power to prevent land taking by the commission within their borders. It is far more likely that the Legislature intended to place the veto power only with those municipal bodies whose concerns are the limited ones of park commissioners, thus treating towns and cities alike in that respect.

An examination of the history of G. L. c. 92, § 79, and G. L. c. 45, supports the conclusion that for a taking for reservation purposes the commission need only obtain the concurrence of an elected board of park commissioners, if there is one, in an affected town, or of a duly appointed board of park commissioners, if there is one, in an affected city. The Legislature first provided for municipal public parks by St. 1882, c. 154, "An Act authorizing towns and cities to lay out public parks within their limits," subsequently amended and codified in G. L. c. 45. That act provided that a town or city that voted to accept the act could elect a board of park commissioners, which would have the power to acquire by purchase, gift, devise, or otherwise, lands for public parks, and to improve and regulate those parks.

Ten years later the Legislature created the Board of Metropolitan Park Commissioners, which was directed to "consider the advisability of laying out ample open spaces for the use of the public, in the towns and cities in the vicinity of Boston," and to report to the next General Court "a comprehensive plan for laying out, acquiring and maintaining such open spaces." St. 1892, c. 342, § 1. The legislative commission released its report in January, 1893. Report of the Board of Metropolitan Park Commissioners, 1893 House Doc. No. 150. Its members concluded that "it is necessary to organize a metropolitan [park] district" and that a "proper park system for a [metropolitan] community . . . cannot be developed within local lines." *Id.* at x, xii. The report stated that "[t]he excellent legislative provisions [which would include St. 1882, c. 154] that have from time to time been made to meet the necessities of the various communities of the Commonwealth in the way of parks and other open spaces for recreative purposes cannot with good results be applied to the requirements of this region." *Id.* at 3.

The report cites as obstacles to a local solution concerning the need for parks and open spaces "[l]ocal [j]ealousies" and "the fact that in most cases [the communities'] resources are strained to the utmost extent to meet the demands imposed by their rapid increase in population." *Id.* at 10, 12.

The Legislature responded to this report by enacting St. 1893, c. 407, "An Act to establish a metropolitan park commission," which, as amended, is now codified in G. L. c. 92, §§ 33-59, 79. The commission's jurisdiction extended over a Metropolitan Parks District consisting of thirty-seven cities and towns in the greater Boston area. The Metropolitan Park Commission, the predecessor of the defendant Metropolitan District Commission, see St. 1919, c. 350, § 123, was given the power "to acquire, maintain and make available to the inhabitants of said district open spaces for exercise and recreation," and to that end was endowed with the eminent domain powers at issue here. St. 1893, c. 407, § 4, codified at G. L. c. 92, §§ 33, 79.

It is important to note that before the enactment of St. 1893, c. 407, an amendment was offered which would specifically have required the Metropolitan Park Commission to obtain the concurrence of the selectmen, in addition to that of the board of park commissioners, if any, of any town in which the commission planned to take land for park purposes. 1893 House Journal at 612. That amendment was defeated. *Id.* at 670. Thus, the Legislature concluded that although local park commission approval should be required for a taking for metropolitan park purposes, if such a commission were in existence, the approval of town selectmen should not be required. Rejection of the proposed amendment was consistent with the earlier report of the Board of Metropolitan Park Commissioners, 1893 House Doc. No. 150, which had recognized the necessity for regional park planning unobstructed by local concerns unrelated to park development.

Municipal park commissioners "are public officers having the power to take land, to lay out and improve public parks, to make rules for their use and government, and to exercise all the other powers conferred upon them by [G. L. c. 45,

§§ 2-11]." *Strachan* v. *Mayor of Everett,* 326 Mass. 659, 662 (1951). Although park commissioners may be expected to be sensitive to fiscal and numerous other concerns, their principal focus is on the development, improvement, and maintenance of public parks and open spaces. Local park commission approval of a land taking for a district park is likely to enhance the coordination of regional and local park planning, but it is unlikely to result in thwarting regional park plans because of concerns unrelated to park development. The principal function of selectmen, however, is not the development, improvement, and maintenance of parks. Even while having the powers and duties of park commissioners, selectmen must focus primarily on numerous other municipal interests, such as raising tax revenue and encouraging employment opportunities. As a result, it is reasonable to conclude that a decision of selectmen whether to approve a land taking for district park purposes would be more likely to reflect the influence of fiscal and other nonpark considerations than would a decision of a board of park commissioners. It appears, therefore, that rejection of the amendment that would have required the concurrence of selectmen before the Metropolitan Park Commission could take land for park purposes by eminent domain, was motivated by the Legislature's desire to meet the need on which the report of the Board of Metropolitan Park Commissioners had focused.

From the legislative history and the statutory language chosen, it is apparent that the Legislature sought to encourage the development of public parks both by enacting St. 1893, c. 407, which created the Metropolitan Parks District, and by enacting St. 1882, c. 154, which gave towns with an elected board of park commissioners, and cities with an appointed board of park commissioners, the right to lay out parks within their boundaries. When the Legislature amended G. L. c. 45, § 2, in 1924, to provide that in the absence of an elected board of park commissioners, the town's board of selectmen "shall act as such board of park commissioners," St. 1924, c. 209, § 1, there is nothing to suggest that it had any purpose other than to make available to all towns the benefits of G. L. c. 45, §§ 2-11. Thus, a town which had not elected a board of park

commissioners could nonetheless acquire land for public parks, G. L. c. 45, § 3, connect public parks with other sections of the town, G. L. c. 45, § 4, lay out, improve, and regulate public parks, G. L. c. 45, § 5, control military exercises in the parks, G. L. c. 45, § 8, and establish limits on the height of buildings on public ways abutting the parks, G. L. c. 45, § 11. Clearly, promotion of public parks was the legislative goal in 1882 and 1893. There is no suggestion in St. 1924, c. 209, § 1, that that legislative goal had shifted or that the Legislature at that time intended that selectmen should have the authority to prevent the establishment of metropolitan park lands within a town.

For the several reasons set forth herein, we have concluded that the commission has authority to take in fee, or impose restrictions on, the land in Canton owned by Codex Corporation, by eminent domain, without obtaining the concurrence of the town's board of selectmen.

NOLAN, J. (dissenting). I dissent from the court's decision. I believe that the majority improperly interprets G. L. c. 92, § 79, and G. L. c. 45, § 2. In the face of clear statutory language, the court focuses on vague legislative history to support its conclusion. This approach contradicts a salient principle of statutory construction.

It is well settled that statutory language itself provides the "principal source of insight into the legislative purpose." *Hoffman* v. *Howmedica, Inc.,* 373 Mass. 32, 37 (1977). Also, when the statutory language is plain and unambiguous, an investigation into legislative history is an improper source of statutory construction. *Id.* These rules of construction control in this case. General Laws c. 92, § 79, requires the Metropolitan District Commission to obtain the concurrence of a majority of the board of park commissioners of a town or city before acquiring land by eminent domain. General Laws c. 45, § 2, compels[1] the

---

[1] General Laws c. 45, § 2, as amended through St. 1976, c. 274, provides that "[i]n a town which has not elected a board of park commissioners . . .

board of selectmen of a town to act as the board of park commissioners in the absence of an elected board.

Clearly, the board of selectmen, acting as the board of park commissioners, acquires all the powers and responsibilities of that body including the veto power under G. L. c. 92, § 79. It seems highly unlikely that the Legislature intended the board of selectmen to acquire the extensive powers listed in G. L. c. 45, §§ 2-11, but not the veto power under G. L. c. 92, § 79. The court's attempt to differentiate a person "holding" office and one "acting as" the holder of an office serves only to obfuscate its position rather than to support it.

The court's reliance on the different treatment afforded cities and towns under G. L. c. 45, § 2, is not persuasive. The numerous differences between cities and towns supply ready solutions to the apparently different treatment. One most obvious difference between city and town park commissioners is that city commissioners are appointed and town commissioners are elected. G. L. c. 45, § 2. The Legislature, in requiring the board of selectmen to act as park commissioners in the absence of an elected board, may have acknowledged the delays in the elective process. Therefore, when empowering the board of selectmen to act, the Legislature assured the existence of a board when the necessity for one arose. On the other hand, the mayor of a city, through the appointment process, can easily create a board in such instances. Considering the potentially large number of distinctions between cities and towns, e.g., population and governmental structure, the court's reasoning lacks merit.[2]

The majority improperly interprets the defeat of a proposed amendment before the enactment of St. 1893, c. 407, which would have required the consent of the board of selectmen as

the selectmen shall act as such board of park commissioners." The word "shall" ordinarily implies an imperative obligation. *Hashimi* v. *Kalil,* 388 Mass. 607, 609 (1983).

[2] This distinction between cities and towns also allows the language "if any" in G. L. c. 92, § 79, to retain significance. If a mayor of a city has not appointed park commissioners, the commission need not obtain the concurrence of anybody in that city.

well as the board of park commissioners. 1893 House Journal at 612, 670. Any legislative intent drawn from this rejected amendment is purely speculative. We have no information as to the reasons for this rejection. We simply do not know why the Legislature did not pass the amendment. Because the legislative process itself provides many conceivable reasons for the rejection, we cannot conclude that the principal reason was legislative dislike. *Franklin* v. *Albert,* 381 Mass. 611, 615-616 (1980). Moreover, that proposed amendment was defeated in 1893. The Legislature amended G. L. c. 45, § 2, in 1924. St. 1924, c. 209, § 1. This amendment, which requires selectmen to act as park commissioners, may suggest a change in legislative intent.

Further, the majority's intimation, *supra* at 252, that the board of selectmen would be less capable of a decision in favor of a park because of competing concerns is unfounded. The legislative history does not support this, but more importantly, the thinly veiled suggestion that a board of selectmen would thwart regional park plans is unfair. *Supra* at 252. The selectmen of a town are not solely concerned with raising tax revenues and encouraging employment opportunities (although there is nothing unwholesome in either objective). As residents of the town as well as elected officials, they too may be interested in aesthetics and environmental concerns.

The court's decision is a rebuke to those who have the most at stake, the people and officials of Canton. It is a blow to home rule. It is a mistake.