## COMMONWEALTH *vs.* PETER A. COOK.

Norfolk. October 6, 1997. - November 24, 1997.

Present (Sitting at Lowell): WILKINS, C.J., ABRAMS, LYNCH, GREANEY, MARSHALL, & IRELAND, JJ.

*Elections,* Political contributions. *Practice, Criminal,* Indictment, Dismissal. *Statute,* Construction. *Notice,* Administrative hearing. *Administrative Law,* Hearing. *Words,* "Shall."

In a criminal case in which the defendant was indicted for violations of G. L. c. 55, §§ 7 & 10, a Superior Court judge correctly allowed the defendant's motion to dismiss on the ground that the director of the office of campaign and political finance had not provided notice to the defendant and an opportunity to be heard as required by G. L. c. 55, § 3, eleventh par., before referring the matter to the Attorney General: further, reinstatement of the proceedings was prohibited where the two-year limitations period for prosecution set forth in G. L. c. 55, § 3, eleventh par., had passed. [176-181]

INDICTMENTS found and returned in the Superior Court Department on December 21, 1994.

The cases were heard by *Margaret R. Hinkle,* J., on a motion to dismiss.

The Supreme Judicial Court granted an application for direct appellate review.

*Gregory I. Massing,* Assistant Attorney General, for the Commonwealth.

*Francis J. DiMento* for the defendant.

IRELAND, J. We granted the Commonwealth's application for direct appellate review of a judgment entered in the Superior Court in Norfolk County, dismissing two indictments against the defendant, Peter A. Cook, alleging fourteen counts of violating the Commonwealth's campaign finance laws, G. L. c. 55, §§ 7, 10. Because we conclude that the defendant was deprived of his rights under G. L. c. 55, § 3, to notice and a hearing within the prescribed time period, we affirm.

1. *Background.* General Laws c. 55 governs generally the disclosure and regulation of campaign expenditures and contributions. Of particular relevance here is G. L. c. 55, § 3, which creates the office of director of the Massachusetts office of campaign and political finance (OCPF) and invests the director with certain administrative, investigative, and rule-making powers. Section 3, sixth par., states that the "director shall make available to investigative, accounting and law enforcement agencies of the commonwealth all information necessary or advisable to fulfil their duties, with respect to this chapter." In addition to this broad injunction, the statute provides specific limitations for referring information to the Attorney General. The eleventh paragraph of § 3 requires that:

> "The director shall inform any person . . . under investigation by said director . . . of his intention to present to the attorney general evidence of any alleged violation of this chapter. Within ten days of receipt of said notice said alleged violator may request a hearing before the director for the purpose of presenting evidence to the contrary. Said director shall not present evidence of any such alleged violation to the attorney general until after said hearing. Evidence of any such violation of this chapter which has come to his attention shall be presented by the director to the attorney general only after the relevant election involved, but within two years after said election."

2. *Facts.* Pursuant to its statutory authority, OCPF initiated an audit in 1991 of all candidates who had sought election to Statewide or constitutional office in 1990. As part of this audit, OCPF used information that two political campaign committees provided voluntarily to create a data base of contributions made to those committees in the form of money orders.[1]

At some time in early 1992, representatives of OCPF met with the United States Attorney (U.S. Attorney) to discuss the Federal mail fraud statute. At that meeting, the U.S. Attorney asked OCPF whether it had any information that might indicate violations of Federal banking law. The U.S. Attorney specifically identified one area in which such violations potentially

---

[1] The data base consisted of a listing for each candidate that included the number, date, and amount of each money order, as well as the name of the purchaser and the issuing bank.

could occur, namely consecutively numbered money orders totaling more than $10,000. Shortly thereafter, OCPF furnished the information contained in the data base to the Commonwealth's Attorney General and informed him that the U.S. Attorney had asked for the same information. In the spring of 1992, OCPF gave the information contained in the data base to the U.S. Attorney, along with copies of the money orders themselves.

The information contained in the data base revealed that the two committees had each received donations in the form of sequentially numbered money orders purchased on the same day from the Cohasset Savings Bank. As a group, the money orders totaled $15,000.[2] Based on this information, the U.S. Attorney began an investigation and empaneled a Federal grand jury, but declined to indict the defendant. In 1994, the U.S. Attorney referred the matter back to the Commonwealth's Attorney General, who initiated an investigation of his own. At no time did OCPF notify the defendant or conduct a hearing.

On December 21, 1994, a Norfolk County grand jury returned two indictments against the defendant. The first indictment contained twelve counts of making campaign contributions under a false name, in violation of G. L. c. 55, § 10. The second indictment contained two counts of making campaign contributions for the benefit of any candidate in excess of $1,000 within a single calendar year, in violation of G. L. c. 55, § 7.

The defendant filed two motions to dismiss the indictments. The first motion contended that the Federal District Court had improperly released Federal grand jury materials to the State grand jury that indicted him. The second motion contended that the Commonwealth had violated the notice, hearing, and limitation provisions of G. L. c. 55, § 3. A judge in the Superior Court allowed the second motion and thus took no action on the first. The Commonwealth's motion for reconsideration was denied. This appeal followed.

3. *Discussion.* This appeal presents questions of first impression concerning the interpretation of the powers and authority of OCPF under G. L. c. 55, § 3. In particular, the Com-

---

[2]The defendant's name did not appear as the purchaser of any of the money orders and thus did not appear in the data base. However, the defendant's son, Peter Cook, Jr., was listed as the purchaser of two of the money orders in question and another individual named Cook was listed as the purchaser of a third such money order.

monwealth raises four issues on appeal. First, the Commonwealth argues that OCPF was not required to give notice to the defendant at the time it furnished its data base to the Attorney General and the U.S. Attorney because (1) the defendant was not under investigation within the terms of the statute and (2) no alleged violation had been identified, as also required by the statute. The Commonwealth thus concludes that the Superior Court judge erred as matter of law in holding that OCPF had violated the notice and hearing requirements of § 3, eleventh par.

The Commonwealth's argument here is without merit. The Commonwealth is correct in stating that the Superior Court judge's initial memorandum of decision and order did not explicitly conclude that the defendant was under investigation. However, on reconsideration, the judge stated in her second memorandum of decision and order that she was "unpersuaded that there was no OCPF 'investigation' of [the defendant]." Thus, the judge clearly concluded that the defendant was under investigation.

The Commonwealth relies on the judge's subsequent statement that "OCPF had sufficient information to target [the defendant] as a possible violator of the election laws" to conclude that she viewed this latter statement as the proper legal standard for determining if OCPF had violated G. L. c. 55, § 3. But when the judge's two statements are read together, it is clear that the second statement was intended simply to elucidate the conclusion that the defendant was under investigation, not to create a legal standard. Accordingly, the judge did not err as matter of law.

The Commonwealth argues further that the judge also erred in concluding that OCPF had sufficient information even to trigger an investigation of the defendant. The Commonwealth argues that at the time OCPF referred information to the Attorney General and to the U.S. Attorney, it possessed nothing more than a data base containing general information. In effect, this is an argument that the judge committed clear error in her findings of fact. This argument is also without merit. OCPF contacted the U.S. Attorney to discuss possible violations of Federal mail fraud and banking laws. The U.S. Attorney identified one possible area of violation, namely sequentially numbered money orders totaling in excess of $10,000. OCPF in this case had concluded that it had one such collection of money

orders falling under this description. OCPF had merely to take one additional step to learn if there was a common purchaser and to learn the purchaser's identity.

It is thus in the narrowest sense only that the Commonwealth can argue that OCPF had not specifically identified either the defendant himself or the alleged violation at the time OCPF referred its information to the Attorney General and to the U.S. Attorney. Further, OCPF's failure to identify the defendant or the specific alleged violation arose only because OCPF chose to refer its information to other parties rather than to continue its investigation. Regardless of whether there was any intentional misconduct or not, OCPF cannot circumvent the requirements and limitations on its powers and authority by failing to complete its own investigation. The judge accordingly did not commit clear error in her findings of fact.

The Commonwealth argues that the judge's holding would require OCPF to conduct massive investigations that would paralyze its ability to function. The Commonwealth makes much of the appearance of the name of the defendant's son (but not the name of the defendant himself) in the OCPF data base. The Commonwealth concludes from this fact that the judge's holding would have required OCPF in the instant case to investigate not only the defendant, but his wife and all other members of his family, in addition to the parents, children, and other relatives of all other contributors in the data base. This argument is overstated. The fact that the name of the defendant's son appeared in the data base is irrelevant; it required OCPF to investigate neither more nor fewer suspects. All that OCPF needed to do was to investigate whether there was a common purchaser of the money orders. OCPF, however, failed to take even this step.

Second, the Commonwealth argues that, even if OCPF violated the notice and hearing requirements of § 3, the dismissal of the indictments was a disproportionate remedy. The Commonwealth argues that the absence of notice of an opportunity for a hearing did not prejudice the defendant because he still had a right to a trial at which he would have even greater due process protections than he would have had at an OCPF hearing. This argument is without merit.

Our cases have established that the dismissal of a criminal case is a remedy of last resort that requires, as a general rule, a showing of irremediable harm to the defendant that prevents the

possibility of a fair trial. See, e.g., *Commonwealth* v. *Pellegrini*, 414 Mass. 402, 405-406 (1993); *Commonwealth* v. *Lewin*, 405 Mass. 566, 579 (1989); *Commonwealth* v. *Cronk*, 396 Mass. 194, 198 (1985). Notwithstanding this high threshold, the clear harm done to the defendant here was to deprive him of his right to have perhaps avoided indictment and trial altogether.[3] It is no answer to say that the defendant would have a better opportunity to obtain vindication at trial. We have long recognized "[t]he right of individual citizens to be secure from an open and public accusation of crime, and from the trouble, expense and anxiety of a public trial . . . ." *Jones* v. *Robbins*, 8 Gray 329, 344 (1857). In *Commonwealth* v. *McCarthy*, 385 Mass. 160 (1982), which raised a closely related issue, we dismissed an indictment for lack of evidence to support a finding of probable cause, even though the defendant otherwise received a fair trial. In *McCarthy*, we concluded that, because the indictment against the defendant was fatally defective, "all subsequent proceedings taken in reliance on the indictment were void." *Id.* at 163, quoting *Connor* v. *Commonwealth*, 363 Mass. 572, 574 (1973). Here, the failure of OCPF to conduct a hearing made the presentation of evidence to the Attorney General inappropriate. Any subsequent reliance on the evidence is, like in *McCarthy*, void, thus requiring dismissal of the indictments at issue here.

This matter must be distinguished from *Commonwealth* v. *Lyons*, 397 Mass. 644 (1986), in which we held that a violation of the notice and hearing requirements of a different statute[4] "carrie[d] no substantial risk of lasting prejudice to the defendant." *Id.* at 648. In *Lyons*, there was no prejudice to the defendant because the complaint process could have been commenced again and the defendant could still be heard. *Id.* By contrast, here we are now well past the two-year period from the relevant

---

[3]The Commonwealth argues that there is no reason to surmise that the defendant would have requested a hearing, that he possessed any contrary evidence that he desired to present, or that his presentation of such evidence would have caused OCPF to refrain from referring the matter to the Attorney General. The Commonwealth further argues that the subsequent grand jury indictments prove that there could have been no informal dispositions of allegations at an OCPF hearing and that the indictments represent a conclusive determination that the charges against the defendant warrant formal prosecution. The Commonwealth's arguments here are conclusory and unfounded.

[4]General Laws c. 218, § 35A, dealing with the opportunity to be heard before issuance of process on complaints for misdemeanors brought in the District Court Department.

election described in § 3, eleventh par. The defendant would thus have no opportunity for an OCPF hearing unless the two-year presentment period in the statute is directory rather than mandatory. Because we hold below that the two-year presentment period is in fact mandatory, *Lyons* is distinguished.

The third issue that the Commonwealth raises is that the two-year presentment limitation is solely a directive to OCPF and is not a mandatory limitation. The Commonwealth argues that nothing in the eleventh par. (or any other part) of § 3 purports to place a time limit on prosecuting election law violations. The Commonwealth then argues that, if a criminal statute states no limitations period, the residual six-year period of G. L. c. 277, § 63, applies. See *Commonwealth* v. *Northern Telecom, Inc.*, 25 Mass. App. Ct. 255, 257 (1988). The Commonwealth notes that candidates and campaign committees are required to maintain their records for a period of six years. G. L. c. 55, §§ 2, 5.

The Commonwealth also argues that the purpose of the statute is for the orderly functioning of OCPF, namely to wrap up its proceedings from one election before another election occurs. We have held previously that a statute that relates only to the time of performance of an agency's duty is to be considered as directory only and not mandatory. See *Monico's Case*, 350 Mass. 183, 185-186 (1966); *Kerr* v. *Palmieri*, 325 Mass. 554, 558 (1950); *Cheney* v. *Coughlin*, 201 Mass. 204, 211 (1909). Similarly, we have also held that, where a statute requires that an agency "shall" act within a specified period of time, but no remedy is assigned for the agency's delay, failure to meet the deadline does not deprive the agency of its power to act. See *Children's Hosp. Corp.* v. *Rate Setting Comm'n*, 410 Mass. 66, 74 (1991); *Zuckerman* v. *Zoning Bd. of Appeals of Greenfield*, 394 Mass. 663, 666-667 (1985); *Warman* v. *Warman*, 21 Mass. App. Ct. 80, 82-83 (1985). The Commonwealth thus concludes that any failure on behalf of OCPF to present evidence to the Attorney General within two years should not divest the public of its interest in seeing campaign finance laws enforced.

The defendant counters with the general rule that the use of the word "shall" is mandatory, especially where (as here) there is nothing in the statute or its history that would lead to a contrary result. See *Massachusetts Soc'y of Graduate Physical Therapists, Inc.* v. *Board of Registration in Medicine*, 330 Mass. 601, 603 (1953); *Grant* v. *Aldermen of Northampton*, 316 Mass. 432, 433 (1944); *Uglietta* v. *City Clerk of Somerville*, 32 Mass.

App. Ct. 742, 745 (1992). While we have long recognized exceptions to this general rule, they have been limited and do not apply here.[5] More importantly, in *Hashimi* v. *Kalil,* 388 Mass. 607, 609-610 (1983), we held that the general rule of viewing "shall" as mandatory is at its strongest when the protection of rights is involved. As discussed above, this case clearly implicates an important right of the defendant, namely the right to be free from an unwarranted trial. Accordingly, we find the defendant's arguments more persuasive here and conclude that the use of "shall" in § 3, eleventh par., is mandatory.

The Commonwealth argues that OCPF will be greatly hindered by the two-year presentment limitation because it amounts to a period that is effectively much shorter than two years. To comply with the notice and hearing requirements, OCPF would have to give notice to a person under investigation well before the two-year period expires. But we do not see this as a particularly onerous burden and, to the extent it creates an inconvenience, it is a matter for consideration by the Legislature.

The Commonwealth's concern that the public will be divested in this case of its interest in seeing the campaign finance laws enforced is well taken. However, the very existence of limitations periods recognizes that there is a deprivation of rights inherent in the risk of lingering prosecution. By their application, such time limits always prevent the enforcement of laws in which the public has a legitimate interest. The purpose of § 3, eleventh par., is to create rights for an accused violator of the campaign finance laws. Each of the other provisions fulfils this purpose. It thus seems unlikely that the Legislature intended that the provision in question would deal instead with the orderly functioning of OCPF.

The final issue on which the Commonwealth bases its appeal concerns whether OCPF is prohibited from disclosing information to Federal law enforcement authorities. The statute is silent on this point. Nonetheless, because of our disposition of the previous issues, we need not reach this question here.

In summary, we hold that OCPF violated § 3, eleventh par., that the appropriate remedy for this violation was the dismissal

---

[5]See, e.g., *Cheney* v. *Coughlin,* 201 Mass. 204, 212 (1909) (exceptions possible where "non-compliance . . . does in no respect affect the rights of . . . citizens"); *Warman* v. *Warman,* 21 Mass. App. Ct. 80, 83 (1985) (allowing exception where "[a]ny other interpretation would frustrate the purpose of the rule and lead to absurd results").

of the indictments, and that the language concerning the limitations period is mandatory, thus preventing OCPF from reinstating an investigation against the defendant.

The judgment dismissing the indictments against the defendant is affirmed.

*So ordered.*