## Stephen Anzalone vs. Administrative Office of the Trial Court & another.[1]

Suffolk. May 3, 2010. - August 30, 2010.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Practice, Civil,* Summary judgment, Discovery, Action in nature of mandamus. *Trial Court,* Probation officers. *Chief Justice for Administration and Management. Mandamus. Unlawful Interference. Contract,* Promissory estoppel. *Malice.*

In a civil action brought in Superior Court by a plaintiff alleging that he was appointed as a probation officer and then wrongfully denied that appointment by the untimely and improper failure of the Chief Justice of Administration and Management to approve it, the judge, after hearing the defendants' motion for judgment on the pleadings or alternatively for summary judgment, did not err in allowing the entry of judgment dismissing the action without permitting further discovery, where the plaintiff offered no affidavits to counter the defendants' affidavit claiming that the appointment would violate nepotism rules; where the plaintiff offered no reason for seeking discovery other than to pursue an issue not raised in the complaint; and where the plaintiff chose to forgo discovery for almost four months while the defendants' motion was pending. [651-653]

No private cause of action exists under G. L. c. 211B, § 8, for unsuccessful Trial Court job applicants. [653-654]

In a civil action brought in Superior Court by a plaintiff alleging that he was appointed as a probation officer by the Commissioner of Probation (commissioner) and then wrongfully denied that appointment by the untimely and improper failure of the Chief Justice of Administration and Management (CJAM) to approve it, the judge, after hearing the plaintiff's motion for judgment on the pleadings or alternatively for summary judgment, did not err in concluding that the plaintiff was not entitled to a writ of mandamus to compel the CJAM to appoint him as a probation officer, where the CJAM had no legal duty to appoint the plaintiff as a probation officer simply because the commissioner certified that the appointment met the Trial Court's standards; where the plaintiff had notice of the CJAM's authority over his hiring at the time he completed his employment application; and where the CJAM acted well within his discretion in concluding that the appointment would, at the very least, lead to the appearance of nepotism; further, the CJAM was not required by G. L. c. 211B, § 8, to act on the appointment within fourteen days of receiving notice from the commissioner. [654-659]

---

[1]Chief Justice for Administration and Management of the Trial Court (CJAM).

An unsuccessful Trial Court job applicant failed to demonstrate the viability of his claims for tortious interference [660-661] or promissory estoppel [661-662].

CIVIL ACTION commenced in the Superior Court Department on July 8, 2008.

The case was heard by *Raymond J. Brassard*, J., on a motion for judgment on the pleadings or, alternatively, for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Kevin G. Powers* for the plaintiff.

*Ronald F. Kehoe*, Assistant Attorney General, for the defendants.

MARSHALL, C.J. The plaintiff, Stephen Anzalone, appeals from a judgment in the Superior Court dismissing his claims against the Administrative Office of the Trial Court (AOTC) and the Chief Justice for Administration and Management of the Trial Court (CJAM). Anzalone's claim, in brief, is that he was appointed as a probation officer by the Commissioner of Probation (commissioner) and then wrongfully denied that appointment by the CJAM's untimely and improper failure to approve it. Anzalone sought injunctive relief, damages, and attorney's fees against the defendants for their alleged violation of G. L. c. 211B, § 8 (count one),[2] wrongful interference with prospective advantageous relationship (count three), and "detrimental reliance" (count four). Anzalone also sought a writ of mandamus to compel the CJAM to appoint him as a probation officer (count two). We transferred the case here on our own motion.

As Anzalone conceded at oral argument, see *infra*, and as the judge held, Anzalone is not entitled to relief pursuant to G. L.

___

[2]General Laws c. 211B, § 8, provides, in relevant part, that the CJAM "shall establish and promulgate standards for the appointment, performance, promotion, continuing education and removal of all personnel within the trial court, except judges, clerks and registers of probate . . . . Any appointment that is governed by standards promulgated under the provisions of this section shall forthwith be certified in writing for compliance with such standards to the [CJAM]. The [CJAM] shall have the power to reject any such appointment within fourteen days after receipt of the certification of compliance by the appointing authority but such power to reject any such appointment shall be limited to noncompliance with the standards for appointment."

c. 211B, § 8, because that statute does not create a private right of action. As to the claim for mandamus, we conclude that because the defendants owed no legal duty to Anzalone to appoint him as a probation officer, an action in the nature of mandamus will not lie. Because Anzalone did not meet his burden under Mass. R. Civ. P. 56, 365 Mass. 824 (1974), of establishing contested issues of material fact on the claims of tortious interference and detrimental reliance, respectively, the judge properly dismissed those claims as well. We affirm the judgment dismissing all of Anzalone's claims.

1. *Background.*[3] Subject to the superintendence power of this court, the CJAM has "general superintendence of the administration of the trial court." G. L. c. 211B, § 9. Among the CJAM's powers is the authority to promulgate "system wide personnel policies and hiring practices," *id.* at § 9 (iv),[4] to review all appointments and dismissals governed by such standards, *id.* at § 9 (xxviii), and to rescind appointments or dismissals for noncompliance with the standards. *Id.*[5]

Prior to 2001, the statute governing the appointment of probation officers provided, in relevant part: "Subject to appropriation, the [CJAM] may appoint, dismiss and assign such probation officers to the several sessions of the trial court as he deems necessary." G. L. c. 276, § 83, as appearing in St. 1992, c. 379, § 188. In 2001, the Legislature revised G. L. c. 276, § 83, to provide, in relevant part: "Subject to appropriation, the commissioner of probation may appoint, dismiss and assign such probation officers to the several sessions of the trial court

---

[3]Our summary of the relevant facts is drawn from the complaint and from supplemental uncontested material of record.

[4]General Laws c. 211B, § 9 (iv), states that the CJAM shall have "the responsibility consistent with section eight of chapter two hundred and eleven B to provide personnel management, including promulgation of job classifications, establishment of system wide personnel policies and hiring practices and the authority to act as collective bargaining agent on behalf of the trial court." This power must be exercised consistently with G. L. c. 211B, § 8, which provides for the creation of an advisory committee on personnel standards, chaired by the CJAM or his designee, to advise the CJAM in devising such standards, as well as on other personnel matters.

[5]General Laws c. 211B, § 9 (xxviii), states that the CJAM "shall review all appointments and dismissals governed by standards promulgated under the authority of section eight for noncompliance with such standards and shall rescind any such appointment or dismissal that does not comply with said standards."

as he deems necessary." G. L. c. 276, § 83, as appearing in St. 2001, c. 177, § 52, approved with emergency preamble, December 1, 2001, by § 81, effective July 1, 2001.

In November, 2006, Anzalone completed a four-page Trial Court form application for employment for a position as a probation officer. In response to a question on the application requiring him to list "any relatives, by blood or marriage, employed within the Massachusetts Judiciary," Anzalone identified three people: his father, an assistant chief probation officer in the Malden Division of the District Court Department; his sister, an associate probation officer in the Plymouth Division of the District Court Department; and an uncle, a court officer in the Superior Court. Anzalone signed the application below the following statement printed on the application form: "I understand that any misrepresentation on this application may be reason for immediate dismissal . . . and that any offer of employment or appointment and any conditions thereto are contingent and become final only upon written approval" of the CJAM.

By letter to the CJAM dated August 29, 2007, with a copy to Anzalone, the commissioner informed the CJAM that he was appointing Anzalone as a probation officer in the Norfolk County Division of the Juvenile Court Department at a stated rate of compensation, "effective upon your approval." When he received his copy of the commissioner's letter, Anzalone, believing his employment with the Trial Court to be imminent, withdrew his acceptance of a teaching position in a public high school alternative program.

On February 14, 2008, approximately six months after the date of the commissioner's letter to the CJAM, the commissioner wrote to Anzalone that the CJAM had rejected the appointment.[6] The underlying suit followed in July, 2008.

In answer, the defendants denied the material allegations of the complaint and asserted affirmative defenses of failure to state a claim, pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), estoppel, fraud, failure of a condition precedent,

_____

[6]The letter from the commissioner to Anzalone concerning the CJAM's rejection of the appointment is not in the record. All parties agree that such a letter was sent to Anzalone and that it contained information that the CJAM had not approved the appointment.

and sovereign immunity. The defendants appended to their answer a copy of Anzalone's employment application; the affidavit of Mark Conlon, the AOTC personnel director; and a copy of the letter from the commissioner to the CJAM notifying the CJAM of Anzalone's conditional appointment. The Conlon affidavit averred, among other things, that a review of the business records of the Trial Court revealed that, as of the date Anzalone signed his application for employment, six of his relatives were employed by the Trial Court — namely, the three named in his employment application, in addition to two first cousins and a cousin by marriage who were employed as court officers or probation officers — and that "their respective applications for employment listed family members who are related to the applicant by blood or marriage and employed by the Trial Court." The defendants also submitted excerpts from the Trial Court Policies and Procedures Manual concerning AOTC hiring policies and procedures.[7]

The defendants moved for judgment on the pleadings under Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974), or, alternatively, for summary judgment under Mass. R. Civ. P. 56. A judge in the Superior Court held a hearing on the motion, at the conclusion of which he announced his decision dismissing the action.

We now turn to the merits.

2. *Analysis.* a. *Superior Court decision.* As a preliminary matter, we consider the procedural basis of the decision of the Superior Court judge dismissing the action. In his brief on appeal, Anzalone contends that if the judge dismissed the case pursuant to rule 12 (c), he impermissibly considered material outside the pleadings.[8] If, on the other hand, the judge granted summary judgment, then the judge failed to give Anzalone the opportunity to conduct discovery that he claims would provide evidence of contested issues of material fact. There is no merit to either argument.

---

[7]The excerpts from the Trial Court Policies and Procedures Manual apparently were not submitted with the defendants' answer. The excerpts appear in the record before us as "Exhibit 4" and presumably were submitted with the defendants' motion for judgment on the pleadings or alternatively for summary judgment. The issue is not material to our decision.

[8]The record discloses no motion by Anzalone to strike the documentary evidence presented by the defendants.

"Modern rules of pleading permit alternative pleading." *Matter of Hilson*, 448 Mass. 603, 613 (2007). See Mass. R. Civ. P. 8 (e) (2), 365 Mass. 749 (1974). Relief may be granted if one of the alternative grounds pleaded is sufficient, despite the insufficiency of any remaining alternative grounds. *Id.* Here, the judge made clear that he considered dismissal proper under either rule 12 (c) or rule 56. Rule 12 (c) provides that if matters outside the pleadings are presented in a motion for judgment on the pleadings, the motion is to be treated as a motion for summary judgment. On our de novo review we shall treat the motion as such and consider whether "the successful [parties have] demonstrated that there is no genuine issue as to any material fact and that [they are] entitled to a judgment as a matter of law." *Souza* v. *Sheriff of Bristol County*, 455 Mass. 573, 576-577 (2010).

Our decision to treat the motion as one for summary judgment is supported by the transcript of the motion hearing, which leaves little doubt that Anzalone's counsel understood that the judge was considering summary judgment.[9] During the hearing, Anzalone's attorney argued that the question whether the provisions of the Trial Court's personnel manual were followed in his client's case "is a material issue of fact." He also stated that for the defendants to prevail on their motion, they should have submitted an affidavit from the CJAM, in addition to the Conlon affidavit, detailing how the decision was made to reject Anzalone's appointment. When the judge asked Anzalone's

---

[9]At oral argument before this court, and contrary to the statements in his brief on appeal, Anzalone's counsel represented that the defendants' motion was allowed only pursuant to Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974), and "was not allowed pursuant to" Mass. R. Civ. P. 56, 365 Mass. 824 (1974). He correctly pointed out that the notice of dismissal sent to the parties, signed by an assistant clerk of the Superior Court, stated that the case was dismissed pursuant to rule 12 (c). He termed statements made by the trial judge to the contrary to be "ambiguous." We disagree.

When asked at the motion hearing in the Superior Court by Anzalone's counsel to specify the grounds for his decision, the judge responded: "I think [the decision is] pursuant to [rule] 12 (c). But if there was a motion made in the alternative, and I see no reason to distinguish between the two, the papers as they come to me would warrant a judgment on both." The defendants did file a "motion in the alternative," and in the context of the hearing, which we shall describe, the judge's statement supports summary judgment as a basis for his decision.

counsel at the hearing why no countervailing affidavits had been submitted, counsel replied that he had submitted his own affidavit identifying the need for discovery, and that the representations in his affidavit precluded a grant of summary judgment.[10]

The judge's decision to enter judgment without permitting further discovery was not error. We agree with the judge that the Conlon affidavit may be read fairly to imply that the reason for the CJAM's rejection of Anzalone's appointment was that the appointment would violate the Trial Court's appointment standards with regard to nepotism. Anzalone offered no countervailing affidavits and offered no reason for seeking discovery other than to pursue an issue not raised in the complaint. See note 10, *supra.* Moreover, he chose to forgo discovery for almost four months while the motion for judgment on the pleadings or alternatively for summary judgment was pending. Having advanced no reasonable ground for the delay, see Mass. R. Civ. P. 56 (f), 365 Mass. 824 (1974), Anzalone cannot now complain that the judge did not permit him additional time for discovery.

We turn now to the substance of the appeal, reviewed through the lens of summary judgment.

b. *G. L. c. 211B, § 8.* We need not belabor the question whether Anzalone has a private cause of action pursuant to G. L. c. 211B, § 8, that entitles him to injunctive relief and damages against the defendants for failure to approve his appointment as a probation officer. Although the issue is a principal focus of the parties' appellate briefing, at oral argument Anzalone's counsel expressly conceded the claim. In any event, there is no private

---

[10]The attorney's affidavit is not in the record before us, but the transcript of the motion hearing suggests that the affidavit asked for discovery on an issue not raised in the complaint. The complaint alleged only that the "apparent basis for CJAM Mulligan's rejection of the appointment was his erroneous contention that the appointment was not compliant with the standards of appointment." However, the attorney's affidavit apparently asserted that the CJAM's stated reasons for not approving Anzalone's appointment were a pretext. Anzalone's counsel told the judge at the hearing that he believed that discovery, including document review and "cross-examin[ation]" of the CJAM, would show that the CJAM's real reason for rejecting Anzalone's appointment was because "the CJAM was having a big fight with" the commissioner. He stated that he needed discovery to determine precisely when the CJAM determined not to approve the appointment, and whether the CJAM's action was initiated after Anzalone's lawsuit was filed.

right of action under G. L. c. 211B, § 8, for unsuccessful Trial Court job applicants.

We have "generally been reluctant to infer a private cause of action from a statute in the absence of some indication from the Legislature supporting such an inference." *Loffredo* v. *Center for Addictive Behaviors*, 426 Mass. 541, 544, 546 (1998) (no private right of action in absence of "palpable legislative intent" to create such private right). Nothing in the unambiguous terms of G. L. c. 211B, § 8, indicates a legislative intent to subject the CJAM to private suit for allegedly violating the statutory mandates. Nor is there any hint in the statute that the Commonwealth has agreed to waive its sovereign immunity to permit such claims. See *DeRoche* v. *Massachusetts Comm'n Against Discrimination*, 447 Mass. 1, 12-13 (2006), quoting *Woodbridge* v. *Worcester State Hosp.*, 384 Mass. 38, 42 (1981) ("Absent statutory language that indicates by express terms a waiver of sovereign immunity, the Legislature's intent to subject the Commonwealth to liability may be found only when such an intent is clear 'by necessary implication' from the statute's terms"). Accordingly, we proceed to Anzalone's remaining claims.[11]

c. *Mandamus.* The judge held that, in the absence of a private cause of action under G. L. c. 211B, § 8, mandamus against the defendants will not lie. Although Anzalone has conceded the absence of a private cause of action under G. L. c. 211B, § 8, he nevertheless maintains that he is entitled to a writ of mandamus to compel the CJAM to perform his "legal duty" to appoint him as a probation officer. The judge did not err.

A petition for a writ of mandamus is "a call to a government official to perform a clear cut duty." *Simmons* v. *Clerk-Magistrate of the Boston Div. of the Hous. Court Dep't*, 448 Mass. 57, 59-60 (2006), quoting *Doe* v. *District Attorney for the Plymouth Dist.*, 29 Mass. App. Ct. 671, 675 (1991). See *Lutheran Serv. Ass'n of New England, Inc.* v. *Metropolitan Dist. Comm'n*, 397 Mass. 341, 344 (1986) ("In the absence of an alternative remedy, relief in the nature of mandamus is appropriate to compel a public official to perform an act which the official has a legal

---

[11]In light of our ruling, we need not address the defendants' argument that Anzalone lacked standing to bring his claim for monetary damages under count one.

duty to perform"). The petition may be brought by an individual or group of citizens to "enforce a public duty of interest to citizens generally." *Nickols* v. *Commissioners of Middlesex County*, 341 Mass. 13, 18 (1960), quoting *Pilgrim Real Estate, Inc.* v. *Superintendent of Police of Boston*, 330 Mass. 250, 251 (1953). Mandamus is, however, an extraordinary remedy, invoked sparingly by the court in its discretion. *Murray* v. *Commonwealth*, 447 Mass. 1010, 1010 (2006). "Relief in the nature of mandamus is not appropriate to compel performance of discretionary acts." *Id.* Even if "the act sought to be compelled is ministerial in nature, relief in the nature of mandamus is extraordinary and may not be granted except to prevent a failure of justice in instances where there is no other adequate remedy." *Id.*, quoting *Forte* v. *Commonwealth*, 429 Mass. 1019, 1020 (1999).

The CJAM had no "legal duty" to appoint Anzalone as a probation officer simply because the commissioner certified that the appointment met the Trial Court's standards for appointment.[12] Anzalone had notice of the CJAM's ultimate authority over his hiring from the moment he completed his employment application, which notified Anzalone and all other applicants that "any offer of employment or appointment and any conditions thereto are contingent and become final only upon written approval" of the CJAM.

There is no merit in Anzalone's argument that, on his "appointment" by the commissioner, he was no longer a job "applicant" governed by the standards of appointment applicable to "aspiring employees," but an "appointee" governed only by the

---

[12]The 2001 amendment to G. L. c. 276, § 83, did not dislodge the CJAM's "broad" and "substantial" authority under G. L. c. 211B, §§ 8 and 9, to supervise the selection of probation officers and set appointment standards for probation officers. *First Justice of the Bristol Div. of the Juvenile Court Dep't* v. *Clerk-Magistrate of the Bristol Div. of the Juvenile Court Dep't*, 438 Mass. 387, 407 (2003). As this court has previously stated, notwithstanding that statutory change, the CJAM "retains the power to appoint the commissioner and substantial authority to supervise and direct the performance of all his duties, including the selection of probation officers." *Id.* The CJAM "also retains the broad authority stated in G. L. c. 211B, § 9, including superintendence of the administration of the Trial Court and personnel management." *Id.* It "remains entirely within the CJAM's power to establish a set of conditions that the commissioner would be required to follow in the appointment of probation officers, including strict compliance with all aspects of the personnel manual." *Id.*

Trial Court's personnel standards. In particular, Anzalone argues that so long as the commissioner did not appoint him to serve with or under the supervision of an "immediate family member," as prohibited by § 4.304(C) and (D) of the Trial Court Policies and Procedures Manual,[13] the CJAM had no basis to refuse to approve his "appointment" as noncompliant with the Trial Court's hiring standards on nepotism. See G. L. c. 268A, § 1 (*e*) (defining "[i]mmediate family" for purposes of conflict of interest statute as "the employee and his spouse, and their parents, children, brothers and sisters"). We disagree. Until, and unless, the CJAM gave his final written approval that Anzalone was appointed a probation officer, Anzalone remained a Trial Court job applicant, subject, as all Trial Court job applicants must be, to *all* the hiring policies of the Trial Court.

Among the Trial Court's nepotism standards are the following provisions of the personnel manual:

> "A. It is the policy of the Trial Court that all appointments be made solely on the basis of merit. The practice and appearance of nepotism or favoritism in the hiring process are to be avoided.

> "B. All applicants will be required to disclose the name(s) of any relative(s) working in the Trial Court on their Application for Employment."

Trial Court Policies and Procedures Manual § 4.304(A), (B). Despite his acknowledgment that § 4.304(C) and (D) of the personnel manual apply to him, see *supra*, Anzalone would have us treat subsections (A) and (B) of that same section of

---

[13]The sections of the Trial Court Policies and Procedures Manual referred to by Anzalone are:

"C. No otherwise qualified person may be hired as an employee in or permanently assigned to a Trial Court Division or an Administrative Office if he/she is an immediate family member of any employee or appointing authority within the same Trial Court Division or Administrative Office.

"D. The supervision of an immediate family member, which includes promotion, reappointment, reclassification, demotion, discipline, job performance review, salary determination and day-to-day supervision, violates the State Conflict of Interest Law, G. L. c. 268A."

the personnel manual as "aspiration[al]" or ignore them altogether. To the contrary, these provisions are controlling.

The Trial Court's standards of appointment forbidding nepotism express the Commonwealth's strong public policy against nepotism and the appearance of nepotism in government hiring.[14] See, e.g., G. L. c. 268A, § 6 (inter alia, prohibiting State employee from participating as employee in decisions involving matter in which his or her immediate family has financial interest); G. L. c. 211B, § 10B (b) (prohibiting appointment of assistant clerks in certain Trial Court departments where appointment would "be made in violation of the nepotism provisions of chapter 268A").[15]

The CJAM acted well within his discretion, to which we accord considerable deference, in concluding that the appointment of Anzalone would, at the very least, lead to the "appearance of nepotism," where Anzalone, if hired, would be the seventh member of his family to work in the Trial Court. Trial Court Policies and Procedures Manual, *supra* at § 4.304(A). That Anzalone might otherwise be qualified to serve as a probation officer, as he states, is beside the point, where the avoidance of the appearance of nepotism is properly among the standards of appointment.

We do not overlook that the CJAM had a separate, independent reason to reject the commissioner's appointment: Anzalone's failure to identify on his employment application all of his relatives employed by the Trial Court. It is disingenuous for Anzalone to argue that he was required to disclose only "immediate family" members working within the judiciary, where the application stated that he was to disclose the names and positions of "*any* relatives, by blood or marriage, employed within the Massachusetts Judiciary" (emphasis added). That his other relatives employed in the Trial Court may not have been wholly forthcoming with their own disclosures, even if true, would neither excuse Anzalone's own omissions nor diminish the CJAM's

[14]Anzalone does not contest the substance of the nepotism standards, but only the CJAM's application of those standards as they relate to him.

[15]Anzalone is correct that G. L. c. 211B, § 8, "says nothing about merit appointments, nepotism, or applications," but the observation proves nothing. Section 8 authorizes the CJAM in general terms to promulgate hiring and personnel policies.

authority to reject Anzalone's appointment as noncompliant with the Trial Court's nepotism standards.[16]

We are not persuaded by Anzalone's argument that the CJAM wrongfully rejected the commissioner's appointment as noncompliant because he did not reject the appointment within fourteen days of receiving notice from the commissioner. See G. L. c. 211B, § 8.[17] This question, as the judge rightly concluded, is controlled by *Monico's Case*, 350 Mass. 183 (1966). The issue in *Monico's Case, supra* at 184, was whether the Industrial Accident Board was precluded from affirming the decision of one of its members adverse to the claimant, where the decision was filed more than one year after the hearing, rather than within the forty-five days recited in the statute. We held that where the time period specified in a statute "relates only to the time of performance of a duty by a public officer and does not go to the essence of the thing to be done, it is only a regulation for the orderly and convenient conduct of public business and not a condition precedent to the validity of the act done." *Id.* at 185, quoting *Cheney* v. *Coughlin*, 201 Mass. 204, 211 (1909). Where the Legislature did not expressly provide that the board would lose jurisdiction after expiration of the forty-five day period, we declined to read such a restriction into the statute. See *Monico's Case, supra* at 186.[18]

[16]The cases on which Anzalone relies do not advance his claim for a writ of mandamus. In *Massachusetts Soc'y of Graduate Physical Therapists, Inc.* v. *Board of Registration in Med.*, 330 Mass. 601, 605-606 (1953), we held that the trial judge's refusal to grant a writ of mandamus ordering the registration of certain physical therapists was error where the terms of the statute required such registration. Here, as we have shown, the relevant statute and the standards promulgated thereunder do not require Anzalone's appointment. In *Nickols* v. *Commissioners of Middlesex County*, 341 Mass. 13, 24, 27 (1960), the court issued a writ of mandamus ordering county commissioners to comply with the terms of deed restrictions of land gifted to the Commonwealth, which compliance was also mandated by statute. The deeds of gift were held to establish "an enforceable general public obligation or trust to use the property for those purposes." *Id.* at 18. Here, no statute codifies or establishes a "public obligation or trust" that all the commissioner's conditional appointments will be approved by the CJAM.

[17]In his brief, Anzalone states that he is not, as his complaint represents, pursuing a claim that the CJAM's inaction on his appointment within fourteen days of notification "constituted approval" of the appointment. He now states that he is willing to amend the "confusing paragraphs" of the complaint, and that he is asking only that a writ of mandamus issue to remedy a past inaction.

[18]The decision in *Commonwealth* v. *Cook*, 426 Mass. 174 (1997) (*Cook*), is not to the contrary. In that case, we construed the word "shall" as mandatory

Cf. *Dolan* v. *United States*, 130 S. Ct. 2533, 2539 (2010), quoting *United States* v. *James Daniel Good Real Prop.*, 510 U.S. 43, 63 (1993) (where "a statute 'does not specify a consequence for noncompliance with' its 'timing provisions,' 'federal courts will not in the ordinary course impose their own coercive sanction' ").

Here the fourteen-day review period provided by G. L. c. 211B, § 8, does not go to the "essence" of the CJAM's substantial authority over Trial Court personnel matters or to the validity of the review of proposed appointments. It is ministerial and directory. We take judicial notice that the CJAM oversees seven separate Trial Court Departments operating in some 103 court locations throughout the Commonwealth, and employing approximately 7,000 people. See Annual Report on the State of the Massachusetts Court System Fiscal Year 11 (2009) (employees); Justice in the Balance: Budget Overview for the Massachusetts Judiciary 17 (Mar. 1, 2010) (court houses). Absent an unmistakable legislative directive to the contrary, we will not read into the fourteen-day review period a legal duty that would require the CJAM, notwithstanding his other weighty responsibilities, to review and investigate every prospective employment application within a two-week period, or lose the full breadth of his oversight authority over the applicant. The Legislature has in other circumstances imposed temporal limits on the rejection of prospective appointments to positions within the Trial Court. See, e.g., G. L. c. 211B, § 10B ("[a]ny" appointment of assistant clerks in certain courts "not disapproved by the [CJAM] within 21 days of receipt of the appointing authority's notice of appointment and accompanying certifications shall be deemed to be approved"). It has not done so here.

We turn now to Anzalone's last two claims on appeal.

in a statutory provision imposing a two-year presentment limitation on campaign finance investigations. We stated that such investigations implicated fundamental rights of notice and hearing, among others, and that construction of the word " 'shall' as mandatory is at its strongest when the protection of rights is involved." *Id.* at 181. But we also observed that "where a statute requires that an agency 'shall' act within a specified period of time, but no remedy is assigned for the agency's delay, failure to meet the deadline does not deprive the agency of its power to act." *Id.* at 180, and cases cited. In Anzalone's case, as we have discussed, the operative statute implicates no fundamental rights and provides no remedy for delay. The *Cook* case does not support Anzalone's case.

d. *Interference with prospective advantageous relationship.*
We agree with the judge in the Superior Court that Anzalone's
tortious interference claim against the CJAM does not survive
the defendants' motion. The Commonwealth has expressly
retained its immunity from being sued in its own courts for
"interference with advantageous relations or interference with
contractual relations." G. L. c. 258, § 10 (c).[19,20] Anzalone
argues, nevertheless, that count three is viable because he al-
leged that the CJAM acted with malice in not approving a
conditional appointment. See *South Boston Betterment Trust
Corp.* v. *Boston Redevelopment Auth.*, 438 Mass. 57, 69 (2002)
(G. L. c. 258, § 10 [c], inapplicable where public official is
sued individually for intentional tort). See also *Blackstone* v.
*Cashman*, 448 Mass. 255, 260 (2007) (elements of claim for
intentional interference with advantageous relations include
proof that plaintiff "had an advantageous relationship with a
third party," that "the defendant knowingly induced a breaking
of the relationship," and that defendant's interference, "in addi-
tion to being intentional, was improper in motive or means,"
causing plaintiff harm).

One acts with actual malice when moved by "a spiteful, malig-
nant purpose" that is unrelated to a legitimate interest. *Sereni* v.
*Star Sportswear Mfg. Corp.*, 24 Mass. App. Ct. 428, 433 (1987).
The complaint does not allege such malice, but merely alleges
that the "apparent basis" for the CJAM's rejection of the ap-
pointment was his "erroneous contention that the appointment
was not compliant with the standards of appointment." We disagree
with Anzalone that the talismanic invocation in the complaint of

---

[19]General Laws c. 258, § 10 (c), excludes from the waiver of sovereign im-
munity "any claim arising out of an intentional tort, including assault, battery,
false imprisonment, false arrest, intentional mental distress, malicious prosecu-
tion, malicious abuse of process, libel, slander, misrepresentation, deceit, inva-
sion of privacy, interference with advantageous relations or interference with
contractual relations."

[20]The caption of that portion of Anzalone's complaint pleading tortious
interference alleges the count only against the Administrative Office of the
Trial Court (AOTC). At the motion hearing, Anzalone's counsel admitted that
an action for tortious interference would not lie against AOTC, a State entity.
See G. L. c. 258, § 10 (c). He sought leave to amend the claim by substituting
the CJAM for AOTC. The judge denied the motion to amend, stating that the
proposed amendment would be futile. For the reasons that follow in the text,
we agree.

the phrases "unconscionable," "irreparable harm," and "wrongful interference," standing alone and unsupported, prove or even imply malice. An act or omission may be wrongful, and a delay may be unconscionable, without necessarily being malicious. See *id.* ("Expressions of belief, of course, do not rise to the personal knowledge required by Mass. R. Civ. P. 56 [e], . . . and a judge does not have to accept an assertion of belief as an assertion of the truth of the fact believed"). Cf. *Iannacchino* v. *Ford Motor Co.,* 451 Mass. 623, 636 (2008), quoting *Bell Atl. Corp.* v. *Twombly,* 550 U.S. 544, 555 (2007) (construing rule 12 [b] [6]; "While a complaint attacked by a . . . motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true [even if doubtful in fact] . . .").

There was no error.

e. *Detrimental reliance.* The complaint's fourth count, for "detrimental reliance," as Anzalone concedes, essentially is a claim for promissory estoppel. "Circumstances that may give rise to an estoppel are (1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission." *Sullivan* v. *Chief Justice for Admin. & Mgt. of the Trial Court,* 448 Mass. 15, 27-28 (2006), quoting *Bongaards* v. *Millen,* 440 Mass. 10, 15 (2003).

The gravamen of count four is that the commissioner appointed Anzalone as a probation officer with the intention that he would forgo other employment opportunities and accept the appointment; that Anzalone reasonably relied on the appointment as being imminent; and that he was harmed by the CJAM's allegedly wrongful refusal to accept the appointment. However, any reliance by Anzalone on the commissioner's alleged appointment was unreasonable as a matter of law as the appointment was contingent on the CJAM's approval, as the commissioner had informed Anzalone. Any reliance by Anzalone that the CJAM would give his approval to hiring Anzalone, or that the CJAM's approval would be imminent, was unreasonable in

light of the Trial Court's nepotism standards and Anzalone's own incomplete disclosure on the employment application. See *Dagastino* v. *Commissioner of Correction*, 52 Mass. App. Ct. 456, 459 (2001), and cases cited (courts traditionally have not applied estoppel principles to bind government to contract of employment, and will not enforce alleged promise to employ where such employment would run counter to legislative policy). Ordering the Trial Court to accept Anzalone as an employee would, among other things, run counter to the CJAM's statutory duties to promulgate and enforce standards of appointment, including nepotism standards. See G. L. c. 211B, §§ 8-9. We decline the invitation to issue such an order.

3. *Conclusion.* For the reasons stated herein, we affirm the judgment of the Superior Court dismissing Anzalone's complaint in its entirety.

*So ordered.*