In the

# United States Court of Appeals
## For the Seventh Circuit
_____

Nos. 17-1611 & 17-1712

FIRESTONE FINANCIAL LLC,

*Plaintiff-Appellee,*

*v.*

JOHN R. MEYER,

*Defendant-Appellant.*

_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 7241 — **Amy J. St. Eve**, *Judge.*

_____

ARGUED JANUARY 24, 2018 — DECIDED FEBRUARY 1, 2018

_____

Before BAUER, KANNE, and BARRETT, *Circuit Judges.*

PER CURIAM. Firestone Financial sued John Meyer as guarantor of defaulted loans. Meyer, proceeding pro se, asserted promissory estoppel as both a defense and counterclaim. After an earlier trip to this court, *see Firestone Fin. Corp. v. Meyer*, 796 F.3d 822 (7th Cir. 2015), the district court entered summary judgment for Firestone. Meyer filed two notices of appeal, and we consolidated the appeals. We affirm the judgment in 17-1611 because a reasonable jury could not conclude

that Meyer has satisfied any of the three elements of promissory estoppel. We dismiss 17-1712 as duplicative.

## I. BACKGROUND

Meyer, a disbarred lawyer, is the founder and owner of three Illinois companies: J H M Equipment Leasing Company ("JHM"), which installed and maintained laundry machines in apartment buildings; Dolphin Laundry Services ("Dolphin"), which sold commercial laundry equipment to JHM and other customers; and J H Meyer Enterprises, which operated a laundry facility.

In 2012 and 2013, Firestone Financial Corporation financed JHM's business with four loans totaling about $250,000. (The lender, a Massachusetts corporation, later merged with appellee Firestone Financial LCC.) Because JHM obtained its equipment from Dolphin at little or no cost, the loans to JHM actually financed Dolphin's purchases from the manufacturer. Firestone retained a security interest in JHM's assets. Dolphin, J H Meyer Enterprises, and Meyer also guaranteed JHM's loan obligations.

In 2013 Firestone sued JHM for defaulting on its repayment obligations and Meyer and his other two corporations for breaching the loan guaranties. The defendants raised the affirmative defense and counterclaim of promissory estoppel. They asserted that in November 2012, after Firestone had already issued JHM two loans of about $45,000 each, Firestone's Vice President for Business Development, Dan McAllister, told Meyer that Firestone would set up a $500,000 line of credit for JHM. He then made the promise that underlies the estoppel defense and counterclaim: McAllister assured Meyer

that, until the line of credit was established, Firestone would finance "any" equipment that JHM needed on the "same" and "identical terms" to the first two loans. Firestone issued its third loan to JHM, this one for $98,000, in February 2013. After McAllister left Firestone that spring, Firestone's CEO approved a final loan, for $66,000. The defendants assert that Firestone's refusal to issue further loans, as McAllister supposedly promised, harmed them. Specifically, without further loans, Dolphin could not pay a manufacturer, Maytag, for machines that Dolphin had committed to buy; Maytag then refused to sell equipment to Meyer's companies, costing the defendants "millions."

The case proceeded to judgment quickly. After the defendants answered the complaint, their lawyer withdrew, and the district court entered default judgment against the three unrepresented corporations. This left the claim of breach of guaranty against Meyer, who was now pro se. The court later dismissed Meyer's counterclaim and entered summary judgment for Firestone. It agreed with Firestone that Meyer's allegations were implausible because no financial firm would commit orally to loaning substantial sums to a startup. The court accepted Firestone's argument that the dismissal of Meyer's counterclaim doomed the defense as well. With no defense remaining, the court entered a judgment for Firestone.

But the case was not over. Meyer appealed, and we reversed the dismissal of the counterclaim, reasoning that the district court had misapplied *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007). On remand Meyer conceded Firestone's main allegations. He admitted that JHM "did not make all the payments

set forth in the payment terms of the four promissory notes" and that he "made no payments" to Firestone. He also clarified his promissory-estoppel defense and counterclaim, which in his view excused non-payment. Both were based on McAllister's "promise that Firestone would fund JHM's equipment purchases while Dan McAllister worked on putting in place the line of credit." Meyer also asserted a new defense: Firestone sold some collateral in a commercially unreasonable manner. This collateral consisted of over 300 laundry machines that JHM had placed in buildings owned by Pangea Ventures, LLC. JHM contracted with Pangea to maintain the machines and share with Pangea the revenue they generated. Firestone sold the machines to Pangea for $40,000. Meyer swore that it would have been more commercially reasonable to sell the machines to a buyer who could take over the contract.

The district court again entered summary judgment for Firestone. The court ruled that Meyer's reliance on McAllister's alleged promise of additional funding was "unreasonable as a matter of law." It also found that Meyer could not establish his damages because he presented no bank statements, accounting records, or invoices from the relevant years. Finally, the court rejected as undeveloped and unsubstantiated the argument that Firestone's sale of the laundry machines to Pangea was commercially unreasonable. The judgment was for $427,131 against Meyer.

After the district court entered summary judgment for Firestone, Meyer filed a notice of appeal (No. 17-1611) and a document he styled a "Motion Under Rule 52(b) to Amend the Findings and Judgment of [the] Court." The court denied the motion as procedurally improper, adding that it would

deny the motion on the merits even if construed as a Rule 59(e) motion. Two days later Meyer filed an "amended notice of appeal" (No. 17-1712) in which he specified that he sought to appeal both the district court's entry of summary judgment for Firestone and its denial of his post judgment motion. We consolidated the two appeals for decision.

## II. DISCUSSION

We begin with two preliminary matters. First, appeal 17-1712 is duplicative. Meyer raises no arguments about the denial of his post-judgment motion. And if he had, he did not need to file a second appeal to raise them. *See Borrero v. City of Chicago*, 456 F.3d 698, 699–70 (7th Cir. 2006). We therefore dismiss 17-1712.

That brings us to 17-1611, which presents a threshold question of which state's law governs Meyer's promissory-estoppel defense and counterclaim. Our prior decision used Illinois law, yet the district court on remand applied Massachusetts law, and the parties now seem to agree that Massachusetts law governs under a choice-of-law provision in the guaranties. We follow the parties' lead but note that the answer to this choice-of-law question makes little practical difference here. *Compare Dumas v. Infinity Broad. Corp.*, 416 F.3d 671, 677 (7th Cir. 2005) ("Under Illinois law, a claim for promissory estoppel will only succeed where all the other elements of a contract exist, but consideration is lacking."), *with Neuhoff v. Marvin Lumber & Cedar Co.*, 370 F.3d 197, 203–04 (1st Cir. 2004) (explaining that, under Massachusetts law, "promissory estoppel is nothing but a contract absent consideration").

On to the merits, where Meyer argues that the district court erred in entering summary judgment on his promissory-estoppel defense and counterclaim. He insists that he reasonably believed that, until Firestone set up JHM's line of credit, Firestone would fund any equipment purchase requested, on the "same" terms as the first two loans, "without further question, the signing of documents, or any further review of Meyer's finances." To get past summary judgment on this defense and counterclaim, Meyer needs evidence that (1) Firestone made an unambiguous promise to Meyer for unlimited funding, (2) he took or refrained from action in reasonable reliance on the promise, and (3) he suffered damage as a result. *See Anzalone v. Admin. Office of Trial Court*, 932 N.E.2d 774, 786 (Mass. 2010). A reasonable jury reviewing this record could not find that Meyer carried his burden of proof for any of these elements.

First, Meyer cannot show that McAllister made an unambiguous promise of unlimited funding on the "same" terms used as the first two loans. Such a promise does not even make sense because the first two loans had different principal amounts ($45,788 vs. $44,165) and interest rates (9.25% vs. 10.75%). And the third loan differed from the first two. The first two loans called for 36 monthly payments, but the third loan, issued in February 2013 for yet another amount—$98,000—called for 60 monthly payments. "Particularly in the case of a sizable commercial loan, it is unlikely that oral understandings which leave essential terms to future negotiation will support an enforceable loan agreement." *Lambert v. Fleet Nat'l Bank*, 865 N.E.2d 1091, 1097 (Mass. 2007) (quoting *Coolidge Bank & Trust Co. v. First Ipswich Co.*, 401 N.E.2d 165, 165–66 (Mass. App. Ct. 1980)). Because the parties negotiated

different terms for each loan, there was no unambiguous promise for unlimited, identical loans.

Moving on to the second element, Meyer contends that Dolphin purchased machines from Maytag in reliance on McAllister's promise. But this argument suffers from two problems, one evidentiary and one legal. First, the promise could not have prompted Meyer to guarantee all the loans. He guaranteed the first two loans *before* McAllister made the alleged promise, and he guaranteed the fourth loan *after* Firestone's CEO told him that Firestone would issue no more loans to JHM. At most, the promise of additional funding factored into Meyer's decision to guarantee the third loan. But even as to that (or any) loan, any reliance by Meyer was unreasonable as a matter of law. As the district court correctly stated, "[i]t would be incongruous if Firestone had a review process for the $500,000 line of credit but simultaneously would effectively grant an unlimited line of credit by agreeing to provide JHM with unlimited loans for an indeterminate amount of time." And if Meyer misapprehended McAllister's promise in November 2012, that misapprehension should have been dispelled in February 2013 when JHM's third loan request went through Firestone's regular underwriting process.

Finally, as to the damages element, Meyer submitted insufficient evidence to show that Firestone's promise caused "several million dollars" in harm. Meyer submitted no business records from the relevant years to support his contention that Firestone caused any damage to his companies. Meyer replies that he lost the records when his computer was stolen and his email account was closed for non-payment. But this loss is not Firestone's fault and does not relieve Meyer of his

evidentiary burden. Because a jury would have to speculate about damages, a reasonable jury could not conclude that Meyer was damaged as a result of any reliance on McAllister's alleged promise.

Meyer's brief concludes with an undeveloped argument. He contends that Firestone did not properly mitigate its damages because Firestone's sale of the laundry machine collateral to Pangea was not commercially reasonable. Under Massachusetts law, a secured party that disposes of collateral enjoys a rebuttable presumption of commercial reasonableness. *See* MASS. GEN. LAWS ch. 106 §§ 9-610, 9-626(a)(1). Meyer has not rebutted this presumption. He insists that the machines would have been worth as much as $710,000 to a third party who could have taken over JHM's contract with Pangea. But he appears to base this valuation on an off-the-cuff guess of the revenues that the laundry machines might have generated. With no business records from the relevant years, a jury would have no reliable way of determining whether Meyer's estimation is accurate. In any event, Meyer identifies no other party who would have paid more than Pangea did for the collateral.

## III. CONCLUSION

Because all three elements of Meyer's defense and counterclaim fail, we AFFIRM the district court's judgment in appeal 17-1611 and DISMISS appeal 17-1712 as duplicative.